## McCandless's Appeal.

1. Rhodes constructed a private railroad to his own mines through an alley on the line of an incorporated railroad company with their consent; he was enjoined from using it and ordered to remove the rails, &c. He procured the incorporation of himself and six others as a railroad, coal and oil company with a capital of $100,000; they were authorized to buy any railroad partly or wholly completed, and damages were to be ascertained, &c., according to the General Railroad Law. The company was organized before any stock was taken, and Rhodes sold to them his railroad, mines, &c., for $100,000, payable in the stock of the company, which had no other assets than the property sold by Rhodes. The company relaid the road and operated it with locomotives, &c. *Held*, that Rhodes was the owner after the organization and his sale to them, as he had been before.

2. The road sold by Rhodes having been built without authority of law, and being a nuisance, the act of incorporation did not authorize the company to purchase such road.

3. The railroad after the purchase was still a private road, and not covered by the act of incorporation.

4. The railroad was built from Rhodes's mines to private ironworks. *Held*, that it did not come within the description of a partly built road.

5. The provisions of the General Railroad Law as to damages did not apply to such road, and there was therefore no provision for ascertaining damages.

November — 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Court of Common Pleas of *Lawrence county*: In Equity: No. 155, to October and November Term 1871.

To May Term 1868, of the Court of Common Pleas of Lawrence county, George S. McCandless filed a bill against James Rhodes and The Neshannock Railroad, Coal and Ore Company.

By an Act of Assembly passed January 31st 1868, it was enacted:—

Sect. 1. That David Craig, R. H. Peebles, Joshua Rhodes, A. B. Berger, T. F. Stryker, George Pearson and James Rhodes, their successors and associates, be a corporation by the name of "The Neshannock Railroad, Coal and Ore Company," with power to "purchase, lease, hold and sell or mortgage coal or other mineral lands," on or near their road.

Sect. 2. Gave them power "to build and operate, for the purpose of carrying coal and other minerals and merchandise, a railroad in the county of Lawrence, from the north line to any point on the Erie and Pittsburg, or the New Castle and Beaver Valley Road;" to purchase "any railroad or part of a railroad and right to use the same within the said county, whether wholly or partly constructed as if originally constructed by virtue of the act," with authority "to sell and convey such road or any part thereof with rights of way, &c."

Sect. 3. Gave the right to contract with the New Castle and Franklin Railroad Company for the use of their route or any

part of it, until the completion of their road, and for the subsequent joint use of it with that company.

Sect. 4. The damages to owners of property by the construction of the road, or a road partly constructed, which might be purchased by the company, to be ascertained under the General Railroad Law of February 19th 1849, and its supplements, and if proceedings be pending for such damages, they shall not abate, but may be pursued to completion and this company be liable for the amount ascertained.

Sect. 5. The capital to be $100,000, in shares of $50 each, with power to borrow money and secure the same by mortgage on the road and franchises.

Sect. 6. The directors to be five, one of whom shall be president, and to be chosen annually by the stockholders.

Sect. 7. The company to be under the laws relating to lateral railroads.

The bill set out:—

1. The plaintiff was owner in fee of a lot 120 feet long, in New Castle, bounded on the south-east by a 20 feet wide alley, and seised in fee to the middle of the alley, which had been dedicated for public use by Peebles and others, former owners of the land, in laying out town-lots, that owned by the plaintiff being one; he had store-rooms on the lot abutting on the alley, in which he carried on the business of a grocer, &c.; the free and unobstructed use of the alley was necessary for his business, and the alley was a private alley.

2. The incorporation of the Neshannock company.

3. On the — day of February 1868, Rhodes and the company, against the will of the plaintiff, entered the alley, with cross-ties, rails, &c., and constructed a railroad of $3\frac{1}{2}$ feet gauge, and threatened to maintain it, and since its construction the defendants had continuously operated the road with a locomotive engine and coal-cars, by which his rightful use of the alley had been and would be obstructed, his store-house exposed to destruction, his business impaired, and the lives of himself, his customers and servants continuously endangered. These proceedings were without authority of law, and would work irreparable injury to him.

The prayers were:—

1. That the defendants might be restrained from operating any locomotive engine or car on their railroad in the alley.

2. That the defendants might be ordered to abate and remove the ties, rails, &c., from the alley.

3. For general relief.

The defendants answered, admitting the incorporation of the Neshannock Company; that the company organized by electing a board of directors, a president, secretary and treasurer, and proceeded to complete the railroad from the coal-mines leased by

them in the northern portion of said county to the city of New
Castle.   By their officers they had endeavored to agree with the
plaintiff for the damages to him by the construction, &c., of the
railroad, but not being able to agree, they tendered him a bond
with sureties, to secure the payment of the damages; the plain-
tiff, after receiving the bond, returned it and declined to make any
arrangement in the premises; and after notice to him, the bond
and sureties were approved by the Court of Common Pleas.

After the approval of the bond, the company completed their
railroad, and had continued to use it in transporting coal from
their mines to New Castle.   By means of 180 rods of railroad, in
progress of construction, they proposed to connect with the Erie
and Pittsburg Railroad, and the New Castle and Beaver Valley
Railroad, and carry coals from their mines to those roads.

They denied the allegations of the plaintiff as to the injury of
himself or his property, or as to the obstruction of the alley; they
averred that the public and the plaintiff used the alley daily with
their horses, wagons, &c.   They also averred that the real party
in interest was not McCandless, but Samuel Foltz, who acted in
the name of McCandless, because by agreement he was bound to
make no opposition to the building and using the railroad.

Rhodes denied that any of the matters charged had been done
by him for himself, but what he had done was by direction of the
company and in their behalf.

S. W. Dana, the master, reported that the alley had been laid
out and dedicated by Peebles and others as stated in the bill, and
was used by the public, but the public authorities had never taken
charge of it; that in 1866, Rhodes the defendant had constructed
a railroad from his coal-bank, four miles from New Castle, which
passed through the middle of the alley; he operated the road with
a locomotive engine and coal-cars until January 24th 1868, when
he was restrained from using it by decree from the Court of
Common Pleas of Lawrence county, under proceedings at the suit
of Stewart and Foltz, owners of lots on the opposite side of the
alley from the plaintiff, and ordered to remove the rails and put
the alley in the condition in which it had been previously to the
construction of his railroad.

Before the injunction, Rhodes had used the road to transport
coal from his mines, some to canal-boats and some to supply the
rolling-mill and ironworks of Reis, Brown & Berger, with whom he
had a contract to supply coal for five years.   After this injunction
he procured the act of incorporation above given.   The company
was organized on the 3d of February 1868; and on the 9th of
March, Rhodes sold to the company "his railroad from the coal-
mines to the rolling-mill of Reis, Brown & Berger, about 4¼
miles long, together with the switches, side-tracks, locomotives,
cars, shutes, ties, timbers, rails, &c., including all the property,

rights and privileges, and lands, and his coal-lease, and everything belonging to him connected with the railroad, and also made over the contract with Reis, Brown & Berger, for supplying their mill with coal; and assumed the payment of damages which might become payable to George S. McCandless and others, for rights of way;" for which the company paid him $100,000 in its stock at its par value, to be issued to Rhodes or to such persons as he should direct.

The road through the alley, which had been partly taken up under the decree, was immediately put into order, and had been operated thereafter as it had been previously by Rhodes. The company had no assets other than those derived under the sale by Rhodes;—$50,000 of the stock had been at once issued to Rhodes, and from $15,000 to $20,000 issued to other persons at his request. The road by its rails and ties occupied eight feet of the alley, the gauge of the road was $3\frac{1}{2}$ feet; trains passed several times each day; approach was signalled by a whistle; from 125 to 150 tons of coal were transported daily. Since filing the bill, a branch railroad had been made from the Erie and Pittsburg Railroad, to the works of Reis, Brown & Berger, which connects with the defendants' road. The defendants filed a bond for damages to the plaintiff, which was approved by the court as stated in their answer.

After exceptions to his report the master further found: That a free and unobstructed use of the alley was of great value to the plaintiff in his business and that there were daily and great obstruction and danger by the use of the railroad. The railroad was in fact built by Rhodes, and maintained by him originally for his private interest; since the organization of the corporation it had been maintained solely in the interest of the corporation, which was organized before any stock was subscribed.

On the day of its organization the defendant corporation adopted a resolution, that " the route of the New Castle and Franklin Railroad Company * * * be adopted as part of the route of this railroad." The route of the road as built by Rhodes, had been located and the whole alley appropriated by the New Castle and Franklin Railroad Company; the defendants after the purchase from Rhodes made no resurvey of the route, but accepted and adopted the route as laid by him. Rhodes proceeded in good faith to execute the decree obtained by Stewart and Foltz until the organization of the company, when they endeavored to agree with McCandless as to damages, and afterwards filed their bond as stated in their answer.

On the 11th of August 1871, the court (McGuffin, P. J.) made a decree refusing the injunction and dismissing the bill.

The plaintiff appealed to the Supreme Court and assigned the decree for error.

*L. Taylor*, for the appellant, cited Stewart and Foltz's Appeal,

6 P. F. Smith 413; Bonaparte *v.* Camden & A. Railr., Baldwin 222; Jessup *v.* Louck, 5 P. F. Smith 361; Commonwealth *v.* Erie & N. E. Railr., 3 Casey 351; 3 Kent's Com. 433; Lewis *v.* Jones, 1 Barr 336.

*D. Craig* and *D. B. & E. T. Kurtz,* for appellees.　The reporter received no paper-book of appellees.

The opinion of the court was delivered, May 13th 1872, by

READ, J.—The road which is the subject of the present controversy was before this court, upwards of four years ago, in Stewart and Foltz's Appeal, 6 P. F. Smith 413, and the court then held it was built without authority of law, and enjoined " the defendant (James Rhodes) his servants and agents from running cars on the railroad of the defendant, and along the alley in the bill mentioned, or by and along the premises of the plaintiff, and to remove the rails, cross-ties and embankments in said alley therefrom, leaving the same in as good repair as an ordinary passage-way as it was in, when and immediately before the said road of the defendant was constructed, and that the respondents pay all costs of suit and of this appeal."

The opinion of the court was delivered by the present Chief Justice, and it treated the road as a private road of James Rhodes, invested with no right of eminent domain, and entirely unauthorized to take private property for private use, as it was clearly intended solely for the use of his mills and machinery, and in which the public could have no advantage whatever. It was simply a private railway, constructed under no law of the Commonwealth, and of course a nuisance. This opinion was delivered on the 7th January 1868, and on the 24th January, when the court below made the decree for an injunction agreeably to the order of this court, and before it could be fully enforced, the legislature passed an Act on the 31st January, seven days afterwards, to incorporate the "Neshannock Railroad, Coal and Ore Company."

The corporation was organized on the 3d February, three days afterwards, and on the 25th February filed a bond to secure the plaintiff his damages in the Court of Common Pleas of Lawrence county, which was on the same day approved by the court. The corporation was organized before any stock was subscribed. Under the decree of the 24th January, a small portion of the road in the alley was taken up, but was relaid immediately after the filing of the bond.

The seven corporators named in the bill, including Joshua Rhodes and James Rhodes the defendant, were created a body politic in law, with power to hold coal or other mineral lands not exceeding one thousand acres. By the second section " said company

shall have power and is hereby authorized to locate, build and operate for the purpose of carrying coal and other minerals, and articles of merchandise, a railroad within the county of Lawrence, from a point on the north line of said county to any point on or intersecting with the Erie and Pittsburg, or the New Castle and Beaver Valley Railroad, or both, at or near New Castle, or to intermediate points; and said company shall have power to purchase any railroad or part of a railroad, and the right to use the same, within the said county, whether built and constructed, or partly built and constructed, and shall have the right to use the same for the purposes aforesaid, as if originally built or constructed by virtue hereof, and the owner or owners of any such railroad, built or partly built, are hereby authorized to sell and convey such road, or any part thereof, with rights of way, &c."

The 3d section authorizes a contract with The New Castle and Franklin Railroad Company, " a corporation which had not yet built any road, and having no immediate prospect of building any."

By the 4th section the damages are to be ascertained and paid in the manner provided in the General Railroad Law of February 19th 1849, and the several supplements thereto, " and in case legal proceedings shall be pending for damages, occasioned by any railroad which shall be purchased as aforesaid by such company, such proceedings shall not abate, but may be pursued to completion, and the said company shall be liable to pay the amount of damages so determined."

By the 5th section the capital stock is to be $100,000, divided into 2000 shares of $50 each, with power to increase said stock to $250,000, with power to borrow money for the purposes of the company, and to secure the payment of the same by bond and mortgage upon the property and franchises of the company. The amount of money so borrowed shall not exceed, at any one time, the amount of $12,000 per mile, and the rate of interest not to exceed 7 per centum per annum.

The directors shall be five in number, of whom one shall be president, to be elected annually, each share to be entitled to one vote, and in all other respects, except as herein otherwise provided, said company shall be subject to the provisions of the several laws of this Commonwealth relating to lateral railroads.

It will be observed that this was a close corporation of seven individuals and three associates, and that it would be controlled and managed by whoever held the whole or a majority of the stock, and it is in evidence that no part of the capital was ever subscribed or paid for in money. The capital did not consist of money. The master reports that on the 9th March 1860 articles of agreement in writing were entered into between James Rhodes and the defendant corporation, by which Rhodes, in consideration

[McCandless's Appeal.]

that the company would pay to him $100,000 in the stock of the company, at its par value, and deliver the same to him on demand, granted and sold to the company his railroad from the Peebles coal-mines to the rolling-mill of Reis, Brown & Berger, about four and one quarter miles in length, together with the switches, side-tracks, locomotives (2), cars (50), shutes, ties, timbers, rails, &c., including all the property, rights and privileges, and lands and his coal-lease, and everything belonging to him connected with the railroad ; and also made over the contract with Reis, Brown & Berger for supplying their mill with coal, and assumed the payment of damages which might become payable to George S. McCandless and others for rights of way.

It appears, therefore, that the capital stock consisted of this private railroad of James Rhodes, and as the whole of the capital belonged to him, he was as much the sole owner of it after the agreement as he was before it was entered into.  The company therefore did not locate and operate a railroad, but under another provision of the 2d section purchased this private road, built, as this court has decided, without authority of law, and which it declared to be a nuisance which never could have been intended by the legislature.

On the 3d February 1868 the company adopted a resolution that "the route of the New Castle and Franklin Railroad Company, from the extreme south end thereof to the mouth of Pyle's run (said company consenting thereto), was adopted as a part of this railroad, the connection with the Beaver Valley Railroad and the Erie and Pittsburg Railroad, and the more northerly portions to be determined hereafter."  The company, after their purchase from Rhodes, made no resurvey of route, but they did accept and adopt the route as then had and laid by him.

The company "did no act resurveying the road or locating the same, or relating to the appropriation of private property," says the master.

It is clear, therefore, that this is still a private road, terminating really at the rolling-mill of Reis, Brown & Berger, and is not covered by the alleged Neshannock charter, which if examined into by the Commonwealth in a quo warranto, might end in a judgment of ouster.  This power of inquiry by the first section of the Act of 19th June 1871 (Pamph. L. 1360), may be exercised by this court, where, as in this case, the private right of an individual is injured and invaded by this corporation, claiming to have a right or franchise to do the act from which such injury results.

The private road thus purchased was wholly built and constructed from the mines to the rolling-mill, and does not come within the description of a partly built road.  The fourth section says: "The damages occasioned by the building and construction of said railroad," which means a railroad built and constructed by

[McCandless's Appeal.]

the company created by the act, " or of any partly built road which may be purchased by said company to the owners of private property on which the same may be located, and which shall not have been settled with or secured to said owners by agreement, shall be ascertained and paid in the manner provided in the General Railroad Law of February 19th 1849, and the several supplements thereto," which clause does not apply to a built and constructed railroad like the present road purchased by the company, and there is therefore no provision for the ascertainment of damages in the case before us.

The court therefore erred in denying the injunction and dismissing the bill.

> The decree of the court below dismissing the plaintiff's bill is reversed and the bill is ordered to be reinstated, and the court below is directed to enter a decree in favor of the plaintiff, enjoining the defendants, their servants, agents and workmen from operating and running any locomotive or coal or other car laden or unladen to and fro upon said railroad, built as aforesaid, in and upon said alley, or by and along the premises of the plaintiff, and to remove the cross-ties, iron rails, fastenings and embankments in said alley therefrom, and leaving the same in as good repair as an ordinary passage-way as it was in when and immediately before the said road of defendants was constructed, and that the respondents pay all costs of suit and of this appeal.

AGNEW, J., dissented.