## Gaw v. Bristol and Bridgewater Railroad Company.

*Railroads—Location—Injunction—Act of April 4, 1868—Electric railway—Act of June 19, 1871.*

Where a railroad company regularly incorporated under the act of April 4, 1868, locates its road over private land parallel to a turnpike road and between the termini of two passenger railway companies, the court will not enjoin the construction of the railroad because of an alleged intent to evade a former decree of the court by which the construction of a passenger railway on the turnpike road between the two termini was enjoined, where the evidence does not sustain the allegation of an intent to evade the former decree.

Where a railroad company appears to be proceeding regularly to possess itself of its roadbed by virtue of power conferred upon it by the act of assembly under which it was incorporated, in the absence of proof that its action was taken for the purpose of evading and defeating a former decree of the court or to do some illegal act, equity cannot interfere with the exercise of the statutory rights which it possesses.

Argued Feb. 5, 1900. Reargued March 26, 1900. Appeal, No. 273, Jan. T., 1899, by Henry L. Gaw, Jr., from decree of C. P. Bucks Co., Oct. T., 1898, No. 2, in equity, refusing an injunction, in case of Henry L. Gaw v. Bristol & Bridgewater Railroad Company. Before GREEN, C. J., McCOLLUM, MITCHELL, FELL, BROWN and MESTREZAT, JJ., on reargument. Affirmed.

Bill in equity for an injunction.

The facts were found by YERKES, P. J., as follows:

### FINDINGS OF FACTS.

1. The plaintiff, Henry L. Gaw, Jr., is the owner in fee of a tract of land in Bristol township, Bucks county, fronting on the north side of the Frankford and Bristol turnpike road, and extending to the middle thereof for a distance of about 1,250 feet, between the east bank of the Neshaminy creek and the Newportville road.

2. On November 11, 1897, Edward B. Warner, W. H. Hassenplug and Joel H. DeVictor filed in the office of the secretary of the commonwealth articles of association under the act of

assembly of April 4, 1868, and its supplements, for a charter under the name of the Bristol and Bridgewater Railroad Company, for the purpose of constructing, maintaining and operating a railroad for public use in the conveyance of persons and property, and letters patent were thereupon issued for said corporation. Said articles set out the termini of the proposed road to be, "the bridge over Neshaminy creek, at the village of Bridgewater where the Frankford and Bristol turnpike road crosses said creek in the township of Bristol, and the bridge over Otter creek, where the said turnpike road crosses said creek at the boundary line of the borough of Bristol, in the county of Bucks." The plan of the proposed right of way of said railroad, is described in the draft thereof, as follows, viz:

"Beginning at a point on Otter creek, in the lands of Simon, to the north of the Bristol turnpike, thence along the same to the lands of A. C. Johnson, through the same to the land of Henry J. Hiles, thence crossing the Newportville road through the lands of Lawrence and R. Winder Johnson, thence along the line of the lands of Lawrence and R. Winder Johnson to the land of A. C. Johnson, through the same to the lands of Henry L. Gaw, and thence through the land of Henry L. Gaw to a point on the property of the Bristol & Bridgewater Railroad Company, to the northeast of the Neshaminy creek."

No portion of said proposed railroad is on the line of the Philadelphia and Bristol turnpike road, but is upon the lands of the plaintiff just inside the fence along the said turnpike road. The defendant company has given notice of its purpose to condemn said lands, under the right of eminent domain, according to the provisions of the general railroad law.

3. The Philadelphia and Bristol Passenger Railway Company was incorporated on January 3, 1896, under the act of May 14, 1889, as a street railway, located its proposed route along the aforesaid Frankford and Bristol turnpike road, and began the construction of its railway upon said route over the property and fee within said road of plaintiff against his protest. As a result of a bill in equity filed by plaintiff the Philadelphia and Bristol Passenger Railway Company was on November 13, 1897, perpetually enjoined by this court from constructing, maintaining and operating its railway in front of or upon the land of plaintiff along said turnpike road.

4. In consequence of said decree and a similar order at the suit of the Fidelity Insurance Trust and Safe Deposit Company, it became impossible for the said Philadelphia and Bristol Passenger Railway Company to construct its railway as proposed.

5. On December 8, 1897, there was also chartered under the act of May 14, 1889, the Bristol Passenger Railway Company, for the purpose of constructing and operating a street railway from the intersection of Bath and Otter streets, in the borough of Bristol, to the division line of the lands of R. Winder Johnson and the Fidelity Trust Company aforesaid, along and upon the said Frankford and Bristol turnpike road. The last mentioned incorporation was formed within a month after the charter of the Bristol and Bridgewater Railroad Company.

6. Upon the incorporation of the Bristol and Bridgewater Railroad Company and the Bristol Passenger Railway Company, the Philadelphia and Bristol Passenger Railway Company abandoned certain portions of its route within the borough and township of Bristol, one portion of which abandoned route, to wit: from the bridge over Otter creek, in the borough of Bristol, thence along said Otter street to its junction with Bath street, was occupied and is now covered by the designated route of the Bristol Passenger Railway Company, and other portions of said abandoned route were upon the highway of the Frankford and Bristol turnpike, immediately fronting upon and alongside of the proposed route of the Bristol and Bridgewater Railroad Company.

7. The evidence does not sustain plaintiff's allegation, that the Bristol and Bridgewater Railroad Company and the Bristol Passenger Railway Company were incorporated for the purpose of continuing and extending the line of the Philadephia and Bristol Passenger Railway Company over his lands, or to evade the decree of the court above referred to, enjoining the last mentioned company from constructing, maintaining and operating its railway over his lands and the lands of others, and that the charter of the Bristol and Bridgewater Railroad Company, defendant, was secured for the purpose of constructing, maintaining and operating a street passenger railway of the Philadelphia and Bristol Passenger Railway Company, over that portion of its route where it was declared by the decree of the court that it would be illegal to construct and operate the same over the lands of plaintiff and

others, and that said charter was not secured for the purpose of constructing, maintaining and operating a railroad as contemplated by the act of April 4, 1868.

8. The proposed route of the defendant company is not the same as that enjoined by said decree, so far as it occupies the lands of the plaintiff, but is parallel therewith, and alongside of the same. It is not shown that the intention is to operate said railroad as a street passenger railway only, and not as a steam railroad, within the meaning of the law.

9. The present terminus of the Philadelphia and Bristol Passenger Railway Company is at its present power house, on the east bank of the Neshaminy creek, at or near the village of Bridgewater. And the beginning of the railroad of the defendant is the bridge over the Neshaminy creek at the village of Bridgewater, where the Frankford and Bristol turnpike road crosses said creek in the township of Bristol. But it is not established that the defendant intends to connect its proposed railroad at the points of beginning and ending with the aforesaid electric street passenger railways.

### OPINION.

The facts disclose that the defendant company is regularly chartered as a railroad company under the provisions of the general railroad law, approved April 4, 1868, the twelfth section of which declares that the act shall not be so construed as to authorize the formation of street passenger railway companies to construct passenger railways under or by virtue of its provisions in any city or borough of this commonwealth.

The plaintiff relies upon the case of the Pennsylvania Railroad Company v. Bridgeport Railroad Company, 11 Mont. Co. Rep. 73, and the cases therein cited, as authority to sustain his prayer for an injunction restraining the defendant company from proceeding with its proposed construction.

The route of the Bridgeport Railroad Company located as a steam railroad under the act of 1868 was entirely upon a public highway connecting with a passenger railway operated within a borough of this commonwealth. The location showed that the same was a railroad upon a public highway or street throughout, and therefore a street railway. The proposed route of the Bristol and Bridgewater Railroad Company is throughout

located upon the private lands of the plaintiff, and not upon the street or highway. It is therefore in no sense within the object of the law a street railway or railroad. It is clear the cases are not parallel, and therefore the principles laid down in Penna. Railroad v. Bridgeport Railroad Company, and other cases, do not apply here. The cases do not correspond in other respects. The identity, control, ownership and purposes of the two roads were patent in the case cited, and established the intention to evade the law.

While there is ground for a suspicion that it is intended to operate the Bristol and Bridgewater railroad in connection with the passenger railway line, the fact is not made sufficiently clear to warrant the interference of a court of chancery. If the mere circumstances that a railroad is located parallel to and directly alongside a public highway is to be considered as evidence that the purpose is to offend against the prohibition of the operation of a road as a street railway by a corporation chartered under the act of 1868, then almost every steam railroad in the county would be in danger of being enjoined.

The defendant appears to be proceeding regularly under the statutes to possess itself of its roadbed under the right of eminent domain. In the absence of proof that its action is taken for the purpose of evading and defeating its decree, or to do some other illegal act, a court of equity has no authority to interfere with the exercise of such statutory rights. If the defendant shall hereafter be found abusing its charter privileges in violation of the act creating it, the commonwealth through its attorney general is the power to be invoked for the proper remedy.

In our opinion this disposes of the case and the question raised, of the right of a railroad company chartered under the act of 1868, to operate its road by means of electricity or other power than steam locomotives, does not arise and need not be considered. The material question here is the right of plaintiff to locate and construct its road by virtue of the right of eminent domain. It may be remarked, however, that if a construction is to be adopted restricting such railroads to the use of steam locomotive power, it must offend against the history of railroad construction and progress, in this country at least. Neither can I understand that a railroad company is restricted

to the use of cars or other vehicles or modes of transportation over its tracks. On the contrary it is reasonable that it may receive and transport over its lines any kind of movable carriage, adapted to its construction. However, these questions may be determined when they arise. We have no warrant to award an injunction.

And now, to wit: May 10, 1899, the rule for an injunction is discharged and an injunction refused.

*Error assigned* was the decree of the court.

*Henry Lear*, for appellant.—It is clear under the act of assembly of 1868, and the court's construction thereof, that a company formed under its provisions must be one whose purpose is in entire good faith to construct, maintain and operate a steam railroad for public use in the conveyance of persons and property, in other words passengers and freight.

A corporation invested with the right of eminent domain should be above suspicion as to its bona fides.

If there is a suspicion that a corporation formed under the act of 1868 is in reality a street railway, there certainly seems to be ground for a court of equity, inquiring under the provisions of the act of June 19, 1871, whether such corporation does in fact possess the right or franchise to do the act from which the injury to the plaintiff will result, to find and decree that it does not possess such right and franchise: Penna. R. Co. v. Bridgeport R. R. Co., 11 Mont. Co. Rep. 73; Edgewood R. R. Co.'s App., 79 Pa. 257; Western Penna. R. Co.'s App., 104 Pa. 399; Germantown Pass. Ry. Co. v. Citizens Pass. Ry. Co., 151 Pa. 138.

*Richard C. Dale* and *B. F. Gilkeson*, for appellee.—The act of 1849 is absolutely devoid of any suggestion that the board of directors are limited in their selection of any appropriate motive power, and, on the contrary, the determination of the motive power is a matter solely for their discretion and best judgment.

In Reeves v. The Phila. Traction Company, 152 Pa. 153, this court gave full recognition to the doctrine that corporations possessing franchises to be used for the public conven-

ience are not only entitled, but bound to make use of the new means of transportation which the inventions of modern science have given to the world.

The right of the appellee is questioned upon the ground that their purpose is not conceived in good faith.  Just what the appellant means it is a little difficult to perceive, and whatever force there is in his argument is due to its obscurity. The charge of mala fides always throws a cloud over a case, and the merits of this case will be best served by pointing out that that which the defendant seeks to accomplish is not to avoid any provision of the law, as found in the street passenger railway act, but to avoid the obstruction of their plans consequent upon their inability lawfully to occupy the Bristol turnpike, between Bridgewater and Bristol, by a street passenger railway.  By constructing a railroad under the general railroad law from Bridgewater to Bristol we do avoid the result which seemed to be consequent upon the injunction granted against the street passenger railway, to wit: that the efforts of parties to establish an independent line to Bristol were thwarted, but we do not avoid the decree of the court through any device by constructing that which the court enjoined, to wit: a street passenger railway on the pike.  It is not an illegal evasion to accomplish a desired result lawful in itself by discovering a legal way to do the thing desired: United States v. Isham, 17 Wall. 496 ; Penna. R. Co. v. Bridgeport R. R. Co., 11 Mont. Co. Rep. 73.

OPINION BY MR. JUSTICE BROWN, May 29, 1900:

The appellee, the Bristol and Bridgewater Railroad Company, was incorporated under the act of assembly of April 4, 1868, for the purpose of constructing, maintaining and operating a railroad in the county of Bucks.  The articles of association designated, as required by the act, " the places from and to which the road is to be constructed, maintained and operated," as well as its length, " as near as may be."  The proposed road, as located by the company, passes for a distance of about 1,250 feet over the land of Henry L. Gaw, Jr., fronting on the north side of the Frankford and Bristol turnpike road, in Bristol township.  He filed a bill in the court below setting forth the proposed taking of his land by the railroad company, and, for

reasons therein stated, prayed that an injunction be granted, restraining the defendant from constructing its railroad on his property and that the court would examine and ascertain whether the company did, in fact, possess the right or franchise to construct the said railroad upon his land, and, if not, that an injunction might issue to prevent the injurious acts complained of. It is unnecessary to recite, in detail, the allegations of the bill and the denials and averments of the answer. We need refer only to such as are material to an intelligent consideration of the question before us. The Philadelphia and Bristol Passenger Railway Company, incorporated on January 3, 1896, under the provisions of the act of May 14, 1889, undertook the construction of its railway upon the route designated in its articles of incorporation, and in doing so, occupied for 1,250 feet, that portion of the Frankford and Bristol turnpike road in front of Gaw's property. Under proceedings instituted by him, the company was enjoined from so occupying that part of the turnpike road, which, with other portions of its proposed route, was then abandoned. Subsequently, on December 8, 1897, a charter was granted to the Bristol Passenger Railway Company, under the provisions of the act referred to, for the purpose of constructing a street railway along what had been the route, at the eastern end, of the Philadelphia and Bristol Passenger Railway Company, the latter company extending its road no farther than the east bank of the Neshaminy creek, which is west of appellant's property. Between the eastern terminus of the Philadelphia and Bristol Passenger Railway and the Bristol Passenger Railway there is no connection. The Bristol and Bridgewater Railroad Company, the appellee, as stated, undertook to, and did, locate its road on private property, north of these two termini and between them. Appellant alleging that this railroad company was seeking to evade the decree of the court below, which had enjoined the Philadelphia and Bristol Passenger Railway Company from occupying the turnpike road, by constructing its railroad on private property, for the purpose of allowing the two passenger railway companies named to practically be connected through it, the injunction, which the court below refused, was asked for, and the single question before us is, whether the same was properly denied. The learned judge, who awarded the injunction in the first instance

VOL. CXCVI—29

against the Philadelphia and Bristol Passenger Railway Company, found, among other facts, the following in the case now before us : " The evidence does not sustain plaintiff's allegation, that the Bristol and Bridgewater Railroad Company and the Bristol Passenger Railway Company were incorporated for the purpose of continuing and extending the line of the Philadelphia and Bristol Passenger Railway Company over his [Gaw's] lands, or to evade the decree of the court above referred to, enjoining the last mentioned company from constructing, maintaining and operating its railway over his [Gaw's] lands and the lands of others, and that the charter of the Bristol and Bridgewater Railroad Company, defendant, was secured for the purpose of constructing, maintaining and operating a street passenger railway of the Philadelphia and Bristol Passenger Railway Company, over that portion of its route where it was declared by the decree of the court that it would be illegal to construct and operate the same over the lands of plaintiff and others, and that the said charter was not secured for the purpose of constructing, maintaining and operating a railroad as contemplated by the act of April 4, 1868." We have carefully reviewed the evidence upon which this finding is based, and are persuaded that it was fully justified.

But a single question is raised on this appeal, and that is, the right of the appellee to construct its road, as located, by virtue of the right of eminent domain. On the argument, other questions were discussed by counsel, but they do not now fairly arise and need not be considered. The learned judge in the court below was of the opinion, and so held, that the company appeared to be proceeding regularly to possess itself of its roadbed, by virtue of power conferred upon it by the act of assembly under which it was incorporated, and that in the absence of proof that its action was taken for the purpose of evading and defeating a former decree of the court, or to do some illegal act, equity could not interfere with the exercise of the statutory rights which it possessed. No other view could have been properly taken. The appellant invoked the act of June 19, 1871, and prayed that the court would examine and ascertain whether the defendant did, in fact, possess the right or franchise to do what it had undertaken. That act makes it the duty of the court in which proceedings are had to examine,

inquire and ascertain whether the corporation complained against does, in fact, possess the right or franchise to do the act from which the alleged injury to private rights results. The court, having examined the charter of the appellee and the powers and rights conferred upon it by the Act of April 4, 1868, instantly discovered that what was being done was within the express powers and franchises conferred. The company sought to do nothing that it was not specifically authorized to do by the act which gave it life, and it is a novel doctrine that a court of equity can be appealed to for its decree to restrain the doing of that which, by the express terms of the statute, is declared to be lawful. The appellant, probably believing that the railroad company was undertaking to exercise powers which it did not possess, had a right, in the language of BLACK, C. J., in Commonwealth v. Erie and Northeast Railroad Company, 27 Pa. 339, to demand of the corporation that it show the words of the legislature conferring the powers about to be exercised, and that, failing to do so, it must give up its claim. If such a call had been made upon the appellee—and, by the proceedings now under review, it was practically made—the response would have been, and is now, that it is written in the act of assembly that every power sought to be exercised was conferred upon it, and that it did nothing, and undertook to do nothing, beyond the powers so given. This was the material question before the court below, as it properly stated, and is the material question now before us, and approving what it did, we affirm its decree, refusing the injunction, and dismiss the appeal at the cost of the appellant.