# Windsor Glass Company, Appellant, *v.* Carnegie Company.

*Corporations—Powers—Equity—Act of June* 19, 1871, *P. L.* 1360.

The Act of June 19, 1871, P. L. 1360, which gives courts the right of inquiry at the instance of private parties into the existence and extent of franchises conferred by corporate charters when the latter are set up in support of acts injurious to the individual parties complaining, limits the inquiry to the nature and extent of the franchises prima facie conferred by the charter, and does not extend it to the validity of the charter itself.

Where on a bill in equity filed under the act of June 19, 1871, it appears that the defendant was a railroad company regularly organized for public use in the conveyance of persons and property, the bill cannot be maintained on averments that the railroad actually built was merely a private railroad, located upon the property of a manufacturing company and used exclusively for the purposes of the manufacturing company, and not furnishing passenger cars at all, or stations, or freight cars, which the public can use as they have a right to use a public railroad.

Argued Nov. 7, 1901. Reargued Oct. 30, 1902. Appeal, No. 149, Oct. T., 1901, by plaintiff, from decree of C. P. No. 2, Allegheny Co., Jan. T., 1901, No. 894, dismissing bill in equity, in case of Windsor Glass Company v. The Carnegie Company, Union Railroad Company, Carnegie Steel Company, J. H. Reed, James Gayley, A. M. Moreland, P. C. Knox, George F. McCague, R. A. Franks and William J. Post. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ., on reargument. Affirmed.

Bill in equity for an injunction.

SHAFER, J., found the facts to be as follows:

The bill is by the owner of lands, part of which the Union Railroad Company claims the right to take for railroad purposes under its alleged right of eminent domain; against that company, and its officers and stockholders, for the purpose of having it adjudged that the railroad company is not a bona fide railroad corporation, and is not operating a public road, but only a private road for the use of its stockholders in their manufacturing business, and that it has therefore no right to take the land of the plaintiff, or operate a railroad over it.

### FINDINGS OF FACT.

1. On July 2, 1894, the Union Railroad Company, one of the defendants, was chartered under the general railroad law of April 4, 1868, and its supplements, to build a railroad from the village of Brinton in Braddock township, Allegheny county, across the Monongahela river, through the borough of Homestead to the westerly side thereof, the length of the road being designated as five miles.

2. All the stockholders named in the articles of association were employees of the Carnegie Steel Company, Limited, which company was the real and beneficial owner of all the capital stock of the railroad, any shares not held in its own name being held by individuals for the purpose of maintaining the organization. At, and before the time of the chartering and construction of the Union Railroad Company, the Carnegie Steel Company, Limited, owned and operated very extensive furnaces and manufacturing plants on each side of the Monongahela river, and along the route of the Union Railroad Company, which establishments were connected, in part at least, by railroad tracks, so that manufactured and raw material, and material in the process of manufacture, could be transferred from one part of the system to another.

3. The primary object of the promoters and stockholders of the Union Railroad Company, being in effect the Carnegie Steel Company, Limited, was to more perfectly connect these plants with each other, and with the various railroads passing through the Monongahela valley, on either side of the river.

4. Soon after the procuring of the charter, the road was built under it, and up to the present time there has been expended in its construction about $7,000,000, the construction including two bridges across the Monongahela river.

5. The route of the Union Railroad is through a densely populated district, containing over 30,000 inhabitants, and is through, or in six or more separate towns or boroughs, and there is much freight and passenger traffic back and forth, between these towns, and between them and other places outside.

6. The plaintiff is a corporation, organized under the laws of the state of Pennsylvania for the manufacture of glass, and is the owner of a tract of land in the borough of Homestead,

fronting 240 feet on the Monongahela river, and extending back 635 feet more or less, and the route of the Union Railroad is over and across this land, within a very short distance of the terminus at the line of the borough of Homestead.

7. When the Union Railroad Company in the construction of its road proposed to take land of a width sufficient for two tracks, and over and across the plaintiff's land, a bond was filed in the court of common pleas by the railroad company for that purpose, and the parties came in communication about the damages, and as to a proposition of sale made by the plaintiff. The plaintiff took legal advice as to whether the defendants had or had not the right of eminent domain, although this fact does not appear to have been known to the railroad company at the time. The plaintiff objected to the amount of the bond filed, and it was agreed that they would take the company itself without security, rather than have a bond filed which they deemed too small in amount. To express this agreement a letter, dated March 10, 1899, was written by the plaintiff to the railroad company, agreeing that the defendant company might withdraw the bond, and that the damages should be determined without the filing of a bond, the company to have the right to proceed in the meantime with the construction of the road, under its right of eminent domain. The two tracks were thereupon laid over the plaintiff's land, and the company has been since that time operated over it, and extensive additions and improvements have been made upon the road since that time.

8. The Union Railroad Company has not, and never had any freight or passenger station or depots, nor has it provided any place along the line of its road where passengers or freight may be received or discharged, excepting switches connecting with the property of the Carnegie Steel Company, and a few others. It has no schedule or time table of its trains, and no schedule of rates, and is constructed on such grades that it cannot be reached by the public at any of the thoroughfares which it crosses. It has no passenger cars, and does not engage in the conveyance of passengers. From between sixty-five and seventy per cent of the business done upon the road, and its branches and leased lines, is with the Carnegie Steel Company, one of the defendants; nearly all of the remainder is the trans-

fer of coal cars, wholly upon the north side of the Monongahela river, to the Pittsburg & Bessemer Railroad and other railways, and a few cars are delivered to one or more persons in Homestead, having switches into their works. Including the line leased by it from the Bessemer road (about seven miles), and the branches which have been already built, the company has about twenty-four miles of railroad in operation, and connects with the Pennsylvania Railroad, the Baltimore & Ohio, the Pittsburg & Lake Erie, the Pittsburg & Bessemer, and other railroads.

9. The defendant railroad company having declared its intention of appropriating a strip of the plaintiff's ground, alongside of that which it first appropriated, for the purpose of laying an additional track or tracks, this bill was filed to restrain their entry for that purpose.

The court entered a decree dismissing the bill.

*Error assigned* was decree dismissing the bill.

*Walter Lyon*, with him *Charles H. McKee* and *H. Walton Mitchell*, for appellant.—The right of eminent domain is a very high and arbitrary one, and arises only ex necessitate rei, and will not be presumed to exist in a corporation, unless by express legislative grant: Lance's App., 55 Pa. 16; Phillips v. Dunkirk, etc., R. R. Co., 78 Pa. 177; Edgewood Co.'s App., 79 Pa. 257; Pittsburg, etc., R. R. Co. v. Benwood Iron Works, 31 W. Va. 710 (8 S. E. Repr. 453).

The court had jurisdiction under the act of 1871: Weidenfeld v. Sugar Run R. R. Co., 48 Fed. Repr., 615; Edgewood R. R. Co.'s App., 79 Pa. 257; Kettle River R. R. Co. v. Eastern Ry. Co., 41 Minn. 461 (43 N. W. Repr. 469); Mory v. Oley Valley Ry. Co., 199 Pa. 152; McCandless's App., 70 Pa. 210.

*J. H. Beal*, with him *J. H. Reed, Edwin W. Smith* and *George H. Shaw*, for appellee.—The railroad is in point of fact a public railroad, and the company is invested with the power of eminent domain. Appellant's objection being to the manner in which the road is now being operated, it has no standing to question appellee's rights: Western Penna. R. R. Co.'s App.,

104 Pa. 399; Rudolph v. Penna. S. V. R. R. Co., 166 Pa. 430; Gaw v. Bristol, etc., R. R. Co., 196 Pa. 442 ; Oliver v. Thompson's Run Bridge Co., 197 Pa. 344; Kansas & Texas Coal Ry. Co. v. Northwestern Coal, etc., Co., 51 L. R. A. 936; Butte, etc., Ry. Co. v. Montana Union Ry. Co., 16 Mont. 504 (41 Pac. Repr. 232) ; Colorado Eastern Ry. Co. v. Union Pac. Ry. Co., 41 Fed. Repr. 293 ; Bridal Veil Lumbering Co. v. Johnson, 34 L. R. A. 368 ; Contra Costa Coal Mines R. R. Co. v. Moss, 23 Cal. 323 ; New Central Coal Co. v. George's Creek Coal & Iron Co., 37 Md. 537 ; De Camp v. Hibernia Underground R. R. Co., 47 N. J. L. 43 ; Phillips v. Watson, 63 Iowa, 28 (18 N. W. Repr. 659).

OPINION BY MR. JUSTICE MITCHELL, January 5, 1903 :

The Act of June 19, 1871, P. L. 1360, gives courts the right of inquiry, at the instance of private parties, into the existence and extent of franchises conferred by corporate charters when the latter are set up in support of acts injurious to the individual parties complaining.   The language is,  " in all proceedings . . . . in which it is alleged that the private rights of individuals, or the rights or franchises of other corporations, are injured or invaded by any corporation claiming to have a right or franchise to do the act from which such injury results, it shall be the duty of the court . . . . to examine, inquire and ascertain whether such corporation does in fact possess the right or franchise to do the act from which such alleged injury . . . . results ; and if such right or franchise has not been conferred upon such corporation, such courts " shall enjoin or award damages, etc.

The act was intended to enlarge and make clear the rights of individuals to inquire into the charter franchises of corporations when asserted to their individual injury.   In general after a charter is once shown, the subject is only open to further inquiry at the direct suit of the commonwealth itself.   This act enables the private suitor to demand that the charter right to do the thing complained of shall be shown.   But it does not put him in the commonwealth's place or clothe the court at his instance with the commonwealth's general powers of inquiry. The inquiry is limited to the nature and extent of the franchises prima facie conferred by the charter, and does not extend

to the validity of the charter itself. This is the plain limit of the language of the act, "and if such right or franchise has not been conferred," etc., and such has been its uniform construction.

In Western Pa. R. R. Co.'s Appeal, 104 Pa. 399, it was held that the inquiry must be confined to the charter, and the question of loss or forfeiture of franchises by laches can only be raised by the state.

"But the appellant, by its counsel, insists that the act of 1871 warrants a much wider investigation into causes of forfeiture than those which may appear merely from the conditions and limitations of a charter. In other words, that the position of the commonwealth, as in a writ of quo warranto, may be assumed, and the mere nonuser of the franchise proved, in order to establish forfeiture of the defendant's right to act under its charter. But to this we cannot agree. . . . The act of 1871 contemplates nothing more than that it shall be made to appear from the charter that the corporation has the power to do the particular act in controversy, and which involves some right of the contestant."

The appellant's complaint in the present case is thus stated in its own abstract of its bill wherein it avers: "That said Union Railroad is not a bona fide corporation engaged in operating a railroad for public use in the conveyance of persons and property, but is a scheme or device of the defendants for the operation under the guise of a railroad charter of a private railroad or system of railroad tracks located upon the property of the defendants, and connecting the various plants and departments of the manufacturing system operated by defendants and forming a part thereof and used exclusively for the purposes of said manufacturing system. That defendants have no right or power under the said charter to construct, maintain and operate a railroad of the character and in the manner herein described, and their occupancy and use of your orator's land, as aforesaid, is wrongful, unwarranted and in violation of law."

The inquiry under this bill, it is manifest, is not into the rights conferred by the charter, but into the conduct of the defendants under it. Defendants obtained a charter it is said, for a general railroad, but all the corporators were stockholders in a manufacturing company and acted in the interests of the latter, not in

good faith to build and operate a railroad but merely to make an addition to their manufacturing plant. Similar efforts to go behind the rights expressed in the charter have been before this court heretofore.

Rudolph v. Pa. Schuylkill Valley R. R. Co., 166 Pa. 430, was a very similar case. A railroad had constructed a short branch to a village where there was a large iron works and after the construction, the branch was used altogether for the carrying of freight to and from those works. No other stations were provided and no passenger cars. An owner whose land was crossed by the branch filed a bill on the same grounds as the present bill, that the branch was not in good faith a branch road authorized by the statute, but a private road for private benefit. It was held that the charter showing the franchise to build a branch was conclusive, the court saying that if there was bad faith, " the commonwealth would be the proper party to complain."

In Gaw v. Bristol, etc., R. R. Co., 196 Pa. 442, a similar question was determined in the same way though the operating motive for the incorporation of the railroad was admitted to be the accomplishment of an object in which the corporators had been previously defeated, the distinguished counsel frankly arguing that "it is not an illegal evasion to accomplish a desired result, lawful in itself, by discovering a legal way to do the thing desired."

In Oliver v. Thompson's Run Bridge Co., 197 Pa. 344, it was again held that where a bridge was being constructed across a ravine, in accordance with the charter of a bridge company for that purpose, it was not a good objection under the act of 1871 that the building of the bridge may have been inspired by the desire of a passenger railway company to secure a means of passage over the ravine, which it could not obtain for itself for lack of the right of eminent domain.

These cases are conclusive that under the act 1871 the inquiry is limited to the grant in the charter to do the thing complained of. If the power is there given, the authority of the court to interfere is at an end. The further questions of good faith in obtaining the charter or in acting under it can only be raised by the commonwealth. In the present case, as already said, the real substance of the complaint is not that defendants are doing something that the charter does not authorize but that

they are not doing something the charter enjoins, to wit: not furnishing passenger cars at all, and not furnishing stations or freight cars which the public can use as they have a right to use a public railroad.   It is a conclusive reply that if the defendants should now provide stations, passenger and freight trains, time schedules, etc., there could be no question of the charter right to do so, and yet plaintiff's whole complaint would be swept away on the facts.

Much reliance is placed by appellant on Edgewood Railroad Company's Appeal, 79 Pa. 257, but the distinction is obvious. There the acts complained of were not omissions of any part of the charter duty (as is averred here), but were acts affirmatively shown not to be authorized by the charter.   Such a case was directly within the act of 1871.   Mory v. Oley Valley Ry. Co., 199 Pa. 152, was another case of the same kind and the decision was put on the same ground.   " The only possible conclusion," said our Brother BROWN, " is that it (defendant) has undertaken to exercise a right expressly withheld from it by the statute creating it. . . . For a case like this the act of June 19, 1871, was passed."

Decree affirmed at costs of appellant.