# Philadelphia and Trenton Railroad Company, Appellant, *v.* Neshaminy Elevated Railway Company.

*Street railways—Elevated passenger railway—Eminent domain—Injunction—Equity.*

A passenger railway incorporated under the Act of June 7, 1901, P. L. 523, for the purpose of constructing an elevated passenger railway on a public highway of a designated distance of one mile, may after it has received the consent of the local authorities, and has filed a bond to secure a nonconsenting landowner, build such a road, notwithstanding the existence of injunctions secured at the instance of the landowner and restraining other street railway companies from building a surface street railway on the mile designated, so as to complete a continuous line of long distance electric railway.

*Appeals—Assignments of error—Equity—Exceptions.*

The appellate court will not consider a question which was not included in or alluded to in any finding of fact or of law by the trial court, not made the subject of any exception, nor set forth in any specification of error.

Argued Feb. 9, 1903. Appeal, No. 179, Jan. T., 1902, by plaintiff from decree of C. P. Bucks Co., April T., 1902, No. 6, on bill in equity in case of Philadelphia & Trenton Railroad Company and the Pennsylvania Railroad Company, Lessee, v. Neshaminy Elevated Railway Company. Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity for an injunction. Before YERKES, P. J.

From the findings of fact of the trial court it appeared that the plaintiff was the owner in fee of the land underlying the public road set forth in its articles of association as the route

of the defendant's railroad, described as follows: "Commencing in the road leading from Bridgewater to the town of Bristol at a point about two hundred (200) feet northerly from Neshaminy Creek, and running along said road northerly the distance of about one mile and to the place of beginning, all being in the Township of Bristol and in the County of Bucks."

Under the street railway act of May 14, 1889, a charter had been granted in 1896 for the building of a street railway over a route including that as above described and at the suit of the plaintiff its construction has been perpetually enjoined. Injunctions also issued at the instance of Henry L. Gaw, Jr., and other property owners along the route. By reason of these injunctions the line of street railway was incomplete and the construction of the proposed elevated line will make it possible to form a continuous line of railway between the borough of Bristol and the city of Philadelphia.

Other facts appear by the opinion of the Supreme Court.

The court dissolved the preliminary injunction.

*Error assigned* was the decree of the court.

*George Stuart Patterson* and *Henry Lear*, for appellants.— The construction of the proposed elevated railway by the appellee is by virtue of all the circumstances in the case a fraud on the commonwealth in that it will pervert the purpose sought to be effected by the passage of the Elevated Railway Act of June 7, 1901, P. L. 523, to another and inconsistent object, viz: the remedying of a break in a continuous line of street railway on a country road in a rural neighborhood, caused by injunctions heretofore obtained by abutting property owners (who are also the complainants in these proceedings), and further, this proposed elevated railway is a part of, and in furtherance of an illegal scheme to evade such injunctions: Edgewood R. R. Co.'s App., 79 Pa. 257; Mory v. Oley Valley Ry. Co., 199 Pa. 152; Penna. R. R. Co. v. Bridgeport R. R. Co., 11 Montg. Co. Law Rep. 73; Penna. R. R. Co. v. Montgomery County Pass. Ry. Co., 167 Pa. 62; Potts v. Elevated R. R. Co., 161 Pa. 396; Gaw v. Bristol & Bridgewater R. R. Co., 196 Pa. 442.

The route of the appellee, as stated in its articles of associ-

ation, is fatally defective, and contains no warrant for the construction of an elevated railway at that point on the turnpike where the appellants are the owners of the underlying fee.

*Richard C. Dale*, with him *B. F. Gilkeson, George Quintard Horwitz* and *W. F. Sadler*, for appellee.—The appellee is not attempting to use the act of June 7, 1901, for the purpose of accomplishing something which is not contemplated by it. In other words, it is not undertaking to use an act, which gives the right of eminent domain, for its own selfish and private ends, and deny to the public the rights vouchsafed by the act. It, on the contrary, desires to carry passengers and do all things in accordance with the provisions of the act of assembly. It intends to do no more and to evade no responsibilities. It has therefore the right to build the road contemplated : Rudolph v. Penna. Schuylkill Valley R. R. Co., 166 Pa. 430 ; Oliver v. Thompson's Run Bridge Co., 197 Pa. 344 ; Aurora, etc., R. R. Co. v. Lawrenceburgh, 65 Ind. 80.

OPINION BY MR. JUSTICE POTTER, May 25, 1903 :

The act of June 7, 1901, authorized the incorporation of companies " for the purpose of construction and operation of passenger railways either elevated or underground, or partly elevated and partly underground, for the transportation of passengers." The first section of the act provides that permission to erect or construct such a railway must be obtained from the local authorities of the city, borough or township in which the same is to operate. The eighth section of the act confers upon corporations created under it, the right of eminent domain. The act was a general one, authorizing the formation of companies to operate in all parts of the state whether in cities, boroughs or townships. On June 13, 1901, the articles of association of the Neshaminy Elevated Railway Company, under this act of assembly, were filed in the office of the secretary of the commonwealth, and on June 18, 1901, letters patent were granted by the governor to the said company. The articles provided that the route of the railway to be constructed was as follows : Commencing in the road leading from Bridgewater to the town of Bristol at a point about 200 feet from Neshaminy creek, and running along said road northerly, the

distance of about one mile, to the place of beginning, all being in the township of Bristol and county of Bucks. On April 10, 1901, the supervisors of Bristol township gave permission for the construction of an elevated railway by the appellee company, over the route named in the articles of association.

On February 24, 1902, the company, by leave of court, filed its bond in the sum of $20,000 with approved surety, for the use of all parties interested, as required by section eight of the act of June 7, 1901, and shortly afterwards began the construction of an elevated railway over the route designated in its articles of association. On April 10, 1902, the appellants, who are owners of certain land abutting upon the route of the proposed elevated railway and also of the fee underlying the public road over which the elevated railway was to be constructed, filed the present bill complaining that certain railway and railroad companies had been previously incorporated under the street railway act of 1889 and the general railroad act of 1868, for the purpose of constructing a street passenger railway over the same route, and that they had been enjoined by the courts from so doing; that the officers, stockholders and persons interested in the defendant company were substantially the same as those of the enjoined companies; that there was no reason or necessity for an elevated railway at the point in question; that it was the intention of the defendant to construct a railway partly on the surface and that the charter was not obtained for the purpose of constructing a bona fide elevated railway, but for the fraudulent purpose of evading the injunction of the court by a use of the power of eminent domain to complete the railway of a preceding corporation. An injunction was therefore prayed for, to restrain the construction of the proposed road. The appellee company filed an answer denying any fraudulent intention, averring the regularity of its charter and asserting its purpose of building a bona fide elevated railway. The court below granted a preliminary injunction which, after hearing, was dissolved. By agreement of the parties, the hearing on the motion to dissolve was to be treated as a final hearing of the case on bill, answer and proofs, and this appeal is to be treated as an appeal from the final decree in the cause.

The duty which devolved upon the court below was to as-

certain whether the appellee company has the power under its charter to do what it proposes to do. In discharging this duty, the trial judge found that the proposed construction is within the terms of the act of June 7, 1901, above quoted, and that " the grant is within the well defined powers of the legislature." He sets forth also that the injunctions mentioned in the bill were granted upon the ground that the companies which were defendants in those cases were not possessed of the right of eminent domain, and had therefore no power to construct their roads along the highway, except with the consent of the owners of abutting land in whom were vested the underlying fee. But in the present case, the appellee company is proceeding under its right of eminent domain, and has provided for compensation to the abutting owners. The situation is, therefore, entirely different from that which prevailed when the former injunction was granted. The appellee is a new corporation, claiming to exercise the right of eminent domain under legislation since enacted. It cannot, therefore, with any propriety be charged with attempting to evade the former decision of the court. The conclusion reached by the court below as to this point is as follows : " Neither has there been established an illegal conspiracy to use the act of 1901, to fraudulently evade said decrees. Had the allegation been sustained of a lease or ownership by the road to the others in the line of railways extending from Red Lion to Bristol with the intent and for the purpose of filling out the gap, existing in a continuous line, as the result of the injunction of the court, the act of 1901 expressly permits the same to be done."

As is suggested in the argument of counsel for appellee, it would have been entirely competent for the legislature to have conferred upon existing street railway companies the power of eminent domain, in which case the reason for the continuance of the injunction formerly granted would have ceased. The legislature did not, however, see fit to adopt this simple and obvious remedy for a condition of affairs which has grown burdensome to the people of many localities in the state. It did, however, confer the right of eminent domain upon corporations organized, as is the appellee, under the act of June 7, 1901. As that act confers upon the appellee the right to construct its road above the highway, and while endowing it with the right

of eminent domain, it also fixes its liability for damages to the abutting property owners, we are unable to see that the appellants have anything of which to complain. As was said by our Brother BROWN in Gaw v. Railroad Co., 196 Pa. 451, "The company sought to do nothing that it was not specifically authorized to do by the act which gave it life, and it is a novel doctrine that a court of equity can be appealed to for its decree to restrain the doing of that which, by the express terms of the statute, is declared to be lawful."

The second proposition in the argument of appellants is based upon an alleged defect in the statement of the appellee in its articles of association as to its route. The language criticised is perhaps not appropriate, but its use evidently came from familiarity with a similar clause commonly found in applications for charters for street railways, where by means of a double track, a circuit is made upon the line. But it does not appear that this question was raised in the court below. It does not seem to be included or alluded to in any finding of fact or of law. It was not made the subject of any exception, nor is it set forth in any specification of error. For these reasons, we give it no consideration here. The findings of fact by the learned judge of the court below fully justify, and his opinion amply vindicates, the conclusion that the appellee company possesses the right to build its railway in the manner proposed.

The decree is affirmed, and this appeal is dismissed at the cost of the appellants.