# O'Leary *v.* Wabash, Pittsburg Terminal Railway Company, Appellant.

*Railroads—Eminent domain—Condemnation of dwelling house—Widening —Terminals—Act of March 17, 1869, P. L. 12.*

Where a railroad company had acquired for terminal facilities, by purchase, all of the properties in a city block, except two, one of which was a dwelling house in the occupancy of its owner, and after the decision of Dryden v. Ry. Co., 208 Pa. 316, and before a single train had been run on the road, the directors adopted a resolution to condemn the dwelling house for the purpose of widening the terminal site, a court of equity will enjoin any proceedings under the resolution.

Argued Nov. 2, 1904. Appeal, No. 199, Oct. T., 1904, by defendant, from decree of C. P. No. 1, Allegheny Co., Sept. T., 1904, No. 887, on bill in equity in case of Dennis O'Leary v. Wabash, Pittsburg Terminal Railway Company. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Bill in equity for an injunction. Before COLLIER, P. J.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in granting a preliminary injunction.

*A. M. Neeper*, with him *W. M. Lindsay*, for appellant.—The act of 1869 has been construed by this court to empower a railroad company to take a dwelling house in the occupancy of the

owner: Dryden v. Ry. Co., 208 Pa. 316; Glaser v. R. R. Co., 208 Pa. 328.

If there has been a wrong committed, the proper party to complain is the commonwealth: West Penna. Railroad Co.'s Appeal, 104 Pa. 399; Rudolph v. Railroad Co., 166 Pa. 430; Gaw v. Railroad Co., 196 Pa. 442; Oliver v. Bridge Co., 197 Pa. 344; Winsor Glass Co. v. Carnegie Co., 204 Pa. 459.

It is well settled by authority in this state that the action of the board of directors of a railroad company in locating its railroad and appropriating private property for its corporate purposes, cannot be attacked collaterally, nor can the discretion vested in it to do so be reviewed by the courts: Com. v. Railroad Co., 27 Pa. 339; Railroad Co. v. Young, 33 Pa. 175; Struthers v. Railway Co., 87 Pa. 282; Railroad Co. v. Speer, 56 Pa. 325; Parke's Appeal, 64 Pa. 137; Williamsport, etc., R. R. Co. v. R. R. Co., 141 Pa. 407; Dryden v. Railway Co., 208 Pa. 316.

When a railroad company condemns land, it is of necessity the judge of how much is required for its use: Pittsburg, etc., Railway Co. v. Peet, 152 Pa. 488; Pittsburg Junc. R. R. Co.'s Appeal, 122 Pa. 511.

It appearing by the record in this case that the appellant company exercised the power conferred upon it by its charter and by law in appropriating the dwelling house of the appellee, the appellee's right to an injunction in this case is not clear; and an injunction will not be granted unless the complainant's right is clear and free from doubt: Philadelphia's Appeal, 78 Pa. 33; Hoffman's Appeal, 10 W. N. C. 401; Electric Railway Co. v. Sayre Boro., 156 Pa. 23; Smith v. Railway Co., 156 Pa. 5; Thouron v. Railway Co., 174 Pa. 366; Shroder's Appeal, 1 W. N. C. 528.

*Henry A. Davis*, for appellee.

OPINION BY MR. JUSTICE DEAN, December 31, 1904:

The appellant attempted in the court below to apply the decision of this court in Dryden v. Railway Co., 208 Pa. 316, to an entirely different state of facts, an application not warranted by any reasonable interpretation of the acts of 1849 and 1869, nor certainly by anything we said in that decision, nor by any-

thing that was said by the court below in the decree which we there affirmed. We showed that by act of 1849, full power as to the original location of the railroad was lodged in the discretion of its board of directors; that discretion was, however, limited by the plain restriction that they were prohibited from appropriating in its location a dwelling-house in the actual occupancy of the owner without his consent. We then stated, by way of illustration, a well-known fact, that when the original taking had been a strip as wide only as that authorized by the law, and the opening and operation of the railroad so stimulated traffic and business of all kinds, that business structures and even dwellings pressed close to the roadbed on each side, then to provide for the increased traffic the room imperatively required for the roadbed, the legislature, twenty years after the passage of the first act, adopted the act of 1869. It was passed to meet a condition which had developed after the passage of the first act. So remarkable had been the growth of business and population, and so urgent had become the demands of both, the widening act of 1869 was passed. And we then said, that the power to take for purpose of widening is confined to a taking for that purpose alone. Any attempt to appropriate for some other purpose, or in excess of what was necessary for the lawful purpose, would not be within the act. We have not a doubt of the soundness of our interpretation of these acts as announced in that decision and have no notion of departing from it or in any particular modifying it; we only say that under the facts of this case it is outside both the words and intention of the act of 1869, and the Dryden case by irresistible implication so declares.

Glance at the undisputed facts. The plaintiff owned and had occupied for about forty years a brick dwelling in the city of Pittsburg; it was situated on a square bounded by Redoubt alley, Fourth avenue, Ferry street and Third avenue. The Pittsburg, Carnegie & Western Railroad, a Pennsylvania corporation, combined with other roads chartered by other states, the combination forming the defendant company. At the time its road was commenced, the board of directors thought it would need the whole square on which the plaintiff's house stood for terminal facilities. The company followed up this resolution by acquiring by purchase nearly all the property in

this square except plaintiff's and one other. It needed plaintiff's property, not for its rail route or roadbed, but for terminal purposes, such as passenger station and warehouses.

Athough the railroad had been in process of construction for some time, certainly during the years 1902 and 1903, and the company had by purchase and condemnation proceedings acquired all the property in the square under the first resolution already referred to, still two had not been acquired by either method, one of them the dwelling of this plaintiff. Whether the failure to acquire was because he and the company could not agree upon a purchase price does not appear, but on November 3, 1903, the Dryden case came up for argument before this court; a reargument was ordered before a full bench at Philadelphia, where it was again argued at January Term, 1904. On March 7 following, the opinion of this court affirming the decree of the court below was handed down. On July 29 following the board of directors of defendant company was called together for the purpose of considering the widening and straightening of the railway at its Pittsburg terminal. The chief engineer laid before the board maps made by him of what in his opinion the company should require for the safe transportation of persons and property. The board then adopted a resolution, that all property in the square specified in the first appropriation on which was the plaintiff's house and lot, should be taken. Then this bill was filed to enjoin the railroad company from condemning the property for the purpose of widening the terminal site. It further appeared that the company for two or more years had by purchase and condemnation proceedings been acquiring property in the vicinity of O'Leary's house not, however, attempting to condemn any dwelling house in the actual occupancy of the owner.

What is the obvious inference from these facts? It is that the company in the first location of its route considered that they needed the square on which O'Leary's dwelling house stood, for construction purposes; that they acquired all except his and one other property for these purposes; that now, according to the plans, it proposes to acquire it for the same purposes, and this method is prompted by a manifest perversion of our decision in the Dryden case. No discussion of

the meaning of the words "original construction" used in the Dryden case is necessary. It would be a waste of time to define words which have no doubtful signification. The attempt of appellant is, not to widen a road already constructed, but to construct a road with terminals which theretofore had no existence. When this bill was filed not a freight train had yet been run on it; how under the act of 1869, could it have been cramped for room to conduct its traffic by an increase in traffic which it could not have foreseen twenty years before, as were the railroads and people when they demanded the relief given by the act of 1869? The appellant under a pretense of widening, in the face of our plain intimation in the Dryden case, seeks to institute under the act of 1869 proceedings for which that act gives no authority.

But appellant's counsel goes further and argues: "That as a matter of law, the action of the directors of the appellant company appropriating said dwelling house cannot be attacked by appellee in this proceeding and their discretion in this regard cannot be reviewed by the courts." That if there has been a wrong committed the proper party to complain is the commonwealth. We grant, that much is confided to the board of directors of a railroad company in the route adopted by them, the width of the road and the manner of construction, and we have declared over and over that we will not interfere in the exercise of discretion under the law. The cases showing the uniformity of our decisions on this subject are largely cited by counsel for appellant. But no one of them supports his argument. The point he endeavors to make is tersely stated by Justice Brown in the late case of Gaw v. Bristol, etc., R. R. Co., 196 Pa. 442, thus: "It is a novel doctrine, that a court of equity can be appealed to for its decree to restrain the doing of that which by the express terms of the statute is declared to be lawful." What appellant asks us to do here is the converse of this, that is, it appeals to us to do that which palpably violates the act of 1849 without a semblance therefor of authority in the subsequent act of 1869; and this under the guise of a still more novel doctrine, that we shall surrender to the board of directors of a railroad company, not only the discretion to locate and determine the route of their road, which time and again we have declared they have, but

our legal discretion to interpret the statute. This would indeed be a novel doctrine. Perhaps some day under some other constitution that point will be reached but it certainly has not been arrived at under our present one.

The parties having consented that this hearing shall be treated as one from final decree, we therefore overrule all the assignments of error and affirm the decree of the court below. We remit the record to that court with the direction that it carry into effect its decree.