## Bunnell's Appeal.

1. The courts of this state have jurisdiction to restrain public nuisances, producing private injury, but it will be exercised only when the right is clear and not doubtful, and when the threatened injury is of a permanent or irreparable character.

2. That the party has a remedy at law by indictment or action, will not alone prevent the exercise of the power.

3. A road was laid out in 1820 through Bunnell's land; in 1868 he erected a "stone row" across what was alleged to be the road. In a proceeding in equity to restrain him from maintaining the erection, &c., alleging it to be a public nuisance, and a special injury to the plaintiff, the evidence was conflicting as to whether the road had been opened by the supervisor, where it had been opened, and that the route of the road had been frequently changed, &c. *Held,* that the proceeding in equity could not be maintained: 1. Because of the uncertainty of the location of the road: 2. That there was a full remedy at law: 3. That the injury was not permanent and irreparable.

March 13th 1871. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

Appeal from the Court of Common Pleas of *Wyoming county:* In Equity: No. 159 to July Term, 1870.

This was a bill filed, July 28th 1869, by Charles Place and Elizabeth his wife, against James Bunnell. The bill set out:

[Bunnell's Appeal.]

1. Proceedings were instituted in the Quarter Sessions of Luzerne county, to lay out a public road, commencing at or near the house of George Evans, in Tunkhannock township, thence to the house of John Jayne, in Braintrim township. On the 4th of April, 1820, the court ordered a public road to be laid out and opened, fifty feet wide between the points named.

2. In pursuance of the order such road was laid out and opened from the house now of Elizabeth Place, and occupied by Samuel McClain, being at this time in the township of Washington, in the county of Wyoming, to near the house of Jerome Remmington, in the same township, and, as such, has been used by the public, recognised and worked by the proper officers of the township, &c.

3. In 1868 the defendant erected upon the road "a certain purpresture or nuisance, consisting of stone rows and wall "— entirely obstructing the public, and especially the plaintiffs, from using it, &c.

4. The plaintiffs own valuable lands adjoining and near the road, and by reason of the obstruction, a portion of the lands are cut off from any public road, and thereby the plaintiffs have no means of going to and from the same; and other portions of their lands are inconveniently situated in regard to public roads, so that the plaintiffs' "way of ingress and egress to and from the same is circuitous and burdensome." The prayer was that the defendant might be restrained from continuing and maintaining such purpresture and nuisance, and from erecting any other, and be commanded to discontinue the nuisance now existing.

The defendant, in his answer to the 2d and 3d paragraphs of the bill averred that the road mentioned in the paragraph had never been opened as a public road, nor used by the public or recognised or worked by the proper officers as such, and that he had not erected stone rows or any other obstruction to prevent the public or the complainants from "using any legally laid out public highway."

In answer to the interrogatories appended to the bill the defendant said:

"I did, in the year 1868, build stone rows across my fields, where the plaintiffs allege there is a highway or passage, but deny that any such passage or public highway exists either in fact or in law. * * * The same have been maintained and kept up since that time."

An examiner was appointed to take testimony.

From his return it appeared that at the November session, 1819, of the Court of Quarter Sessions of Luzerne county, a petition was presented asking for a road between the points set out in the bill, stating that the distance was about a mile and a half. On this petition viewers were appointed, who at the January session, 1820, reported a road, "beginning at a road from Hunt's Ferry

to W. Jayne's," and running northwardly, by courses and distances, about two miles " to the road from Hunt's Ferry to Tioga Point."

This report was confirmed nisi, January 4th 1820, confirmed absolutely, April 4th 1820, and an order issued to open it fifty feet wide.

Amongst other evidence produced by the plaintiffs was a certified copy of the proceedings to lay out the road; including the report of the jury and the decree of the court ordering the road to be opened. It was found amongst the papers of a deceased supervisor of the township.

A mass of oral evidence was taken by the examiner, on the question whether the " stone rows " erected and maintained by the defendant were on the road laid out and opened under the foregoing proceedings. The testimony was conflicting as to whether the road had been opened, and, if so, where.

The synopsis of the testimony, in the opinion of the Supreme Court, delivered by Mr. Justice Agnew, will present the facts in the case sufficiently for the application of the principles of the decision.

On the return of the evidence by the examiner, the case was heard by agreement, before Elwell, P. J., on bill, answer and evidence, without reference to a master.

After argument, the court, June 7th 1870, decreed, " that the defendant, within fifteen days after notice of this decree, remove the stone rows and wall erected by him, in the line of, or across the road leading from, &c., said road, so as not to obstruct or prevent the public or the said plaintiffs from using the same as a public road. And it is further ordered and decreed that the said defendant be enjoined and restrained from placing any other obstructions to travel in said road. The said road being as laid out ordered to be opened of the width of fifty feet."

he defendant appealed to the Supreme Court and assigned the 'ree for error.

*E. Smith* (with whom was *W. M. Piatt*), for appellant.—The bill being for the suppression of a public nuisance, and the enforcement of a public duty, cannot be maintained in the name of a private party: Mechling *et al. v.* Kittanning Bridge Co., 1 Grant 416; Rhea *v.* Forsyth, 1 Wright 503; Sparhawk *v.* Union Passenger Railway Co., 4 P. F. Smith 401; Black *et al. v.* The Philadelphia & Reading R. R. Co., 8 Id. 249; Cumberland Valley Railroad Co's Appeal, 12 Id. 218; Buck Mountain Coal Co. *v.* The Lehigh Coal & Navigation Co., 14 Wright 91; Reading *v.* The Commonwealth, 1 Jones 196. That where there is a remedy by statute law it must be pursued: Sparhawk *v.* The Union Passenger Railway Co., *supra;* Grey *v.* The Ohio & Penna. Railroad Co.,

1 Grant 412; Gallagher *v.* Fayette Co. Railroad, 2 Wright 102; Updegraff *et al. v.* Crans, 11 Wright 103; Richards's Appeal, 7 P. F. Smith 105. This complaint being for the obstruction of an alleged highway, a remedy has been provided by the statute law, and should be resorted to. Act 13th June 1836, Purd. 880, pl. 94; Act 31st March 1860, Purd. 230, pl. 81. Plaintiffs are not entitled to relief by injunction until their rights have been established by law: Rhea *v.* Forsyth, 1 Wright 503.

*R. B. Little* (with whom were *Little & Stitser*), for appellees, as to a private party's right of action, cited Adams' Eq. 210, 211, and cases in note on page 461; 3 Sharswood's Blackstone, notes p. 220; 3 Daniel's Ch. Prac. 1741; Pittsburg *v.* Scott, 1 Barr 319.

The opinion of the court was delivered, May 8th 1871, by

AGNEW, J.—It is not to be denied that the Supreme Court and the several Courts of Common Pleas have jurisdiction to restrain public nuisances, under certain circumstances. This power is conferred by the 5th clause of the 13th section of the Act of 16th June 1836, extended over the state by subsequent legislation. But the power will be exercised only when the right is clear and not doubtful, and when the threatened injury is of a permanent, or an irreparable character. The mere fact that there is a remedy at law by indictment or action will not alone prevent the exercise of the power, but it is a reason why the jurisdiction of chancery should be confined to cases of a very plain character, where the injury is irreparable and cannot await the slow progress of the legal redress. The authorities upon this branch of equity will be found to be pretty fully collected in the cases of Commissioners *v.* Long, 1 Parsons' Eq. Cases 143, and Commonwealth *v.* Rush, 2 Harris 186.

Tested by these principles we think the decree of the court cannot be supported upon two grounds, to wit, the uncertainty of the location of the public road upon which the alleged nuisance was erected, and the temporary character of the structure placed upon the alleged route of the road. While it must be conceded that the evidence of a public road being laid out by authority of law in the vicinity of the *locus in quo* is indisputable, and that an opening order was issued, there is really no reliable evidence that the route followed the lane or road through James Bunnell's farm, on which he built the stone walls in question, or that it was even opened there under the opening order. True, there is evidence of a narrow lane passing through his land, and that work has been done on it under the authority of the supervisors of the township, and other circumstances from which a jury possibly might infer that the road was located there. But on the

other hand there are countervailing circumstances which involve the route in doubt. It is admitted on all hands that the road was never opened throughout its whole length, and that the travelled route does not correspond in many places with the survey of the road as returned by the viewers. It has been shifted at many points and has been disputed and closed for many years by the occupants of the Bunnell farm, by brick fences, poles, bars, and gates. It is said by a number of witnesses that the road or lane through that farm coincides substantially with the survey of the laid out road. But even this is by no means clear, indeed is extremely doubtful. Doubtless the lane does correspond with the survey as made by the surveyors, Miller and Hine, but this does not prove that it corresponds with the original survey or location by the viewers. The surveyors admit that they found no trace of an original survey, dating back to the year 1820, and that they had no guide in beginning. True, they were shown the place where the house of Evans had stood, but how far the starting-point was from the house no one living can tell, and no evidence remains to indicate. The record calls for it as near the house. They began twenty-two perches from it. What warrant was there for this, except that by starting there their route would coincide with the lane. As they proceeded, their line crossed and recrossed the travelled route at many places, deviating from it sometimes fifteen and eighteen perches; and the last distance in the record falling short of the terminus by ninety perches. What clear evidence is there then that the surveys of these artists followed the original line of the viewers. Then again it is even more than doubtful whether the lane or road through the Bunnell farm was opened through that route, while the proof is clear it was not done under the direction of the supervisor. The two Bunnells, Benjamin, senior and junior, both testify that the road was opened by the elder Bunnell, thirty-seven or thirty-eight years ago, or thirteen years after the location by the viewers for *private* use, and when first opened the supervisor did not direct him where to work. When this is coupled with the other facts in the cause, it leaves the mind in a state of uncertainty whether the *locus in quo* is the public road, and the case becomes one to be settled by the verdict of a jury.

Finally, the alleged nuisance is clearly not one of that character which should invoke the aid of a chancellor. It is but a wall of stone and timber built across the road, a mere barricade, to prevent passage, temporary in character, easily removed, and inexpensive. A few hours' work after a conviction by indictment and trial would remove the obstruction at a small cost of money. It is neither permanent nor irreparably injurious. Upon a view of the whole case, therefore, we are of opinion it is one where the plaintiff should be sent into the courts of law for his redress, civil

or criminal, provided both at common law and by statute. This is not the ordinary case, which was evidently in the mind of the learned judge, of an old and long-known road, clearly indicated by usage, by the recognition of the highway authorities and other sufficient evidence of its lawful location, where the loss of the original evidence is fully supplied by the facts. But here the facts that the road was never opened throughout its entire length, that through the Bunnell farm it was opened many years after the view by private hands, that the surveys lately made had no reliable beginning or ending point, and that the route has been disputed many years, are all reason to lead a chancellor to doubt and to send the case to a jury, while the obstruction complained of is but an unimportant barricade made to contest the right, and not a permanent or valuable erection, or likely to produce irreparable injury.

The character of this contention evidently requires that the defendant should bear his share of the expense of it.

The decree of the Court of Common Pleas is therefore reversed, and it is ordered that the costs be paid by the plaintiff and defendant in equal proportions.