# Plymouth Township, Appellant, v. Chestnut Hill & Norristown Railway.

*Street railways—Municipal consent—Act of May 14, 1889—Equity.*

The right of local authorities to give their consent or refusal to a street railway company to construct their road is derived from the constitution and not from the act of May 14, 1889, P. L. 217 ; and the railway company must take such consent upon such conditions as the local authorities may impose, or not at all.

The provision in the act of May 14, 1889, that the company shall complete its road within two years after the consent of the local authorities, unless the time shall be extended by such authorities, does not prevent the local authorities from making it a condition of their consent that the railway shall be completed within a time less than two years.

Where the time limit is, by express stipulation of the contract, one of the conditions on which the consent is given, time is of the essence of the contract, to protect the public in their right to the prompt enjoyment of the benefits accruing to them from the franchise. If, therefore, the railway company does not complete its railway within the time stipulated, and the local authorities revoke their consent for breach of this condition, they will have a standing in equity to prevent the company from constructing its railway.

Argued Feb. 7, 1895. Appeal, No. 146, Jan. T., 1895, by plaintiff, from decree of C. P. Montgomery Co., June T., 1894, No. 5, dismissing bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Reversed.

Bill in equity to restrain the construction of a street railway.

The case was heard on bill, answer and proofs. SWARTZ, P. J., filed the following opinion, by which the facts appear:

" The defendant company obtained the consent of Plymouth township to build an electric railway upon a public road in said township. The plaintiff contends that the right to build such electric railway expired on July 20, 1894, and this bill was brought to restrain the defendant company from doing any further work upon the public roads of Plymouth township.

" FINDING OF FACTS.

" 1. The defendant company was chartered to build a street railway from Barren Hill to Chestnut Hill and from Barren Hill to Norristown, under the act of May 14, 1889, P. L. 217. The proposed road passes through Whitemarsh township, Plymouth township, Springfield township, the borough of Norristown, and enters the city and county of Philadelphia.

" 2. Consent by all these municipalities was given to the defendant company to build the proposed railway. The supervisors of Plymouth township gave their consent upon the 20th of May, 1893. The written agreement giving such consent contained the following provision : ' And it is further stipulated and agreed that the said company shall build its said railway

over the roads herein described within fourteen months after the date hereof.'

" 3. On the 25th of July, 1894, the supervisors of the said township of Plymouth notified the defendant company that the time for building the railway terminated on July 20, 1894, and that the consent of said township to build said railway was revoked.

" 4. On July 3, 1894, the defendant company placed some ties on the Germantown and Perkiomen turnpike road in Plymouth township. The turnpike road was abandoned some years ago and has been under the care of the supervisors of the respective townships through which it passes. The ten or more ties were laid, spaced almost two and one half feet apart, and trenches were dug to receive them, the length of the ties. The ties were covered up and suitably laid with a view to be straightened up when further construction came along. At this time and prior thereto work was being done at the other end of the proposed railway. The survey of the whole road was completed on July 19, 1894, at least to the line dividing Plymouth township from the borough of Norristown. The construction in Whitemarsh began June 30, 1894. The proper mode of construction was at the beginning of the proposed line, that is between Chestnut Hill and Barren Hill.

" 5. At the time this bill was filed, the defendant was at work with a large force of men in Plymouth township.

" 6. On July 21, 1894, the supervisors of Plymouth township gave their consent to the Conshohocken company to build a passenger railway on the road in question—that is the Germantown and Perkiomen turnpike. This agreement gave said company two years in which to build said railway, and the exclusive right to said township, at least this is the apparent intent of said agreement.

" CONCLUSIONS OF LAW.

" [1. The agreement between the plaintiff and the defendant did not work a lawful change as to the time given by the act of May 14, 1889, in which the railway must be constructed. The defendant had two years in which to complete the construction notwithstanding said agreement.] [1]

" [2. If the defendant failed to comply with the time limit

fixed by the statute, the commonwealth alone can move for a forfeiture for such laches.] [2]

" [3. The violation of the limit of fourteen months, even if such limit is binding on the defendant company, is not ipso facto, a forfeiture by the agreement. A breach as to this provision is not made a cause of forfeiture by the agreement.] [3]

" In support of these conclusions we offer our opinion filed refusing the preliminary injunction and add the following :

" We again examined carefully the case of Allegheny v. Millville &c. Railway Co., 159 Pa. 411. It is true the language of the court is broad enough to sustain the right of the turn- pike to impose the condition as to the fourteen months, but we must apply the opinion to the case then decided and the facts do not raise the issue now before us. [We admit that the consent may be coupled with conditions that are binding upon the railway company, but can the township make conditions that conflict with the terms upon which the charter was granted ? The legislature says you shall have two years to build. The township says, no, you can have but fourteen months. If the township may overrule the legislature in this particular, it may do the same as to any other provision in the act. The township is not hurt ; if it does not approve of the act, it may withhold its consent from the chartered company.] [4]

" If a township may ignore any of the provisions found in the act of 1889, its sections, numbering twenty, may as well be stricken down and in their place we should have but a single section, declaring that street railways may be constructed.

" People ex rel. West Side Street Railway Co. v. Barnard, 110 N. Y. 548, does not overrule In re King's County Elevated Railway, 105 N. Y. 114. In the former case the question of power in a municipality to impose conditions repugnant to the legislative grant was not considered.

" [Even if the township impose the condition that the railway be built in fourteen months, it has not in the case before us stipulated that failure to so build shall terminate all rights under the agreement.] [3] Forfeitures are not favorites with the law, and if the township intended a breach of the agreement to have that effect, it would have been an easy matter to say so in the contract: Reck v. Hatboro Mutual Live Stock & Protective Ins. Co., 163 Pa. 443. Here there was an attempt to

forfeit the right of the defendant company without any notice to it. The purpose is manifest. A rival corporation obtains the consent to use the public roads in question. The supervisors grant to it the right to build within two years. It is very evident the township did not consider the fourteen months limit of any consequence. Why stop the active work of one corporation and give the grant to another? If the necessities for a street railway are so great, the action of the supervisors is calculated to bring about still more delay.

"The township has ample protection under the act of 1889. If the road is not built in two years, the commonwealth will, no doubt, afford relief.

"And now, Nov. 5, 1891, the prothonotary will notify the parties or their counsel of the filing of this report and opinion, and if no exceptions are filed thereto within thirty days from the time of the service of such notice, the prothonotary will enter a decree dismissing the bill at the cost of the plaintiff.

The court entered a decree dismissing the bill.

*Errors assigned*, among others, were (1–5) portions of opinion as above, quoting them, and (15) decree dismissing the bill.

*N. H. Larzelere* and *John G. Johnson*, for appellant.—The condition imposed upon the appellee, to complete its road within fourteen months, was valid: Allegheny City v. Ry., 159 Pa. 414; Pittsburg's App., 115 Pa. 4.

The appellants were entitled to take advantage of the nonperformance of the condition to complete: People v. Mutual Gas Light Co. of Detroit, 38 Mich. 154; Archbald Borough v. Carbondale Traction Co., 3 Dist. Rep. 751; Elliott on Roads and Streets, 584 and note; Allegheny City v. Millville etc. Street Railway, 159 Pa. 411.

There are no circumstances which should induce a court of equity to relieve the appellee from the consequences of its failure to perform the condition to complete: Booth's Street Railway Law, secs. 46, 47, 61.

*Francis Rawle* and *H. C. Boyer*, *H. M. Tracy* with them, for appellee.—Equity has no jurisdiction: Lejee v. Continental P. R., 10 Phila. 362; Com. v. Allegheny Bridge Co., 20 Pa. 185;

West Pa. R. R. Co.'s App., 104 Pa. 399 ; Hinchman v. P. & W.
C. Turnpike Road, 160 Pa. 150 ; Atty. Genl. v. Lombard &
South P. R. Co., 1 W. N. C. 489 ; Rafferty v. Central Traction
Co., 147 Pa. 586 ; Larimer Ry. Co. v. Ry. Co., 137 Pa. 547.

Even where a charter provides a time limit of construction
it has always been held that such a provision is not self execu-
tory and that on noncompliance with the limit of time, forfeit-
ure must be judicially ascertained and declared : Brooklyn
Steam Transit Co. v. Brooklyn, 78 N. Y. 524 ; In re Brooklyn
El. R. R., 125 N. Y. 434 ; Pacific R. R. v. Leavenworth City,
1 Dill. C. C. 393 ; In re Brooklyn etc. R. R., 72 N. Y. 245 ;
Atchison St. Ry. v. Nave., 38 Kan. 744 ; Chicago v. C. & W.
I. R. R., 105 Ill. 73 ; Oakland R. R. v. R. R., 45 Cal. 365 ; Peo-
ple v. Manhattan Co., 9 Wend. 351 ; Booth on Street Railways,
sec. 47 ; Com. v. Commercial Bank, 28 Pa. 383 ; 2 Washburn
on Real Property, sec. 4 ; Nicoll v. N. Y. & E. R. R., 12 N. Y.
121 ; Schulenberg v. Harriman, 21 Wall. 44.

Neither the act of 1889 nor the language of the Plymouth
" consent " contains any language that could be construed as a
forfeiture or condition subsequent: P. F. W. & C. R. v. Pitts-
burg, 1 Pittsb. 392 ; 2 Story's Eq. Jurisprudence, pars. 771, 772,
775, 776 ; Easton P. R. Co. v. Easton, 133 Pa. 505.

The limitation of fourteen months for completing the appel-
lee's line was invalid as contrary to the act of assembly which
gave the appellee two years for that purpose : Com. v. Collins,
8 Watts, 349 ; Tamaqua etc. Ry. v. Inter-County S. Ry., 52
Leg. Int. 14 ; Kings Co. El. R. Case, 105 N. Y. 114 ; People v.
Barnard, 110 N. Y. 552.

The appellee was within the time, even under the strictest
rule asked for by appellant: Kings County El. R. R. Case, 105
N. Y. 117.

OPINION BY MR. JUSTICE MITCHELL, May 20, 1895 :

This case is so clearly within the principle of Allegheny v.
Millville etc. Ry. Co., 159 Pa. 411, that it would be sufficient
to reverse it with a reference to that decison, in which it was
held that the consent of the local authorities is a prerequisite
to the construction of a passenger railway, and that if such
consent is given upon conditions, the railway company must
take it subject thereto or not at all.

As said in that case the right to consent or refuse is " a gift directly from the constitution to the local bodies, and needs no help, nor permits any interference from the legislature." The learned court below overlooked this constitutional character of the local authority, when it held that a condition to the consent, that the railway should be constructed within less time than that allowed by the statute, would be void. If there were the conflict between the conditions of the consent and the statute that the learned judge supposed, the statute, not the consent, would have to give way. How far the legislature may regulate the time or mode of indicating consent or refusal we need not consider, for the legislature has not undertaken to do so. The act of May 14, 1889, sec. 16, P. L. 217, provides that any company proposing to construct a street railway under the privleges of this act, shall in good faith commence within one year after the consent of the proper local authorities, and shall complete it within two years, unless the time shall be extended by the authorities aforesaid. This is not a privilege but a limitation on the privileges or franchise otherwise granted. It is a legislative declaration, as a condition of the grant, that the franchise shall be put in operation within the prescribed time, and not held dormant to stand in the way of the actual attainment by the public, of the benefits to them which are the consideration for the public grant. This limitation being in the fundumental law of the corporation would of itself make the charter liable to forfeiture on failure to comply, and the legislature recognizing that the general rule might be too short for special cases, expressly authorized the local authorities to extend the time. The opposite contingency, that the general rule might be too long for the circumstances or public convenience in other cases did not need to be provided for, because there was no danger in that direction from the fundamental law of the corporation, and the whole subject could safely be left to the control of the local authorities. There is nothing in the statute to indicate that the limitation in the present case to fourteen months was contrary to the legislative intent. The statute does not say " we give you two years whether the local authorities think that too much or not," but " we will not give you more than two years unless the local authorities extend the time." For the latter to curtail the time is not only within

their privilege in consenting, but is in the same line of general policy indicated by the statute itself, that the franchise when granted shall be put into prompt operation.

It is strenuously argued that even if the limitation of fourteen months was valid as a part of the consent, it was at most a condition subsequent and there was no express stipulation for a forfeiture. But the question here is not of forfeiture, but of consent, and a consent revoked in accordance with the terms on which it was originally granted, is the same as none at all. The time limit was an express stipulation of the contract, and one of the conditions on which the consent was given. Time was plainly meant to be of the essence of the contract, to protect the public in their right to the prompt enjoyment of the benefits accruing to them from the franchise. There was no measure of damages for delay and the only way that the public rights could be adequately enforced was by making the time essential. It is said that the township had ample protection in the provisions of the act of 1889, and if the road was not built in two years, the commonwealth would no doubt afford relief. But the township was not bound to wait two years, as already shown, nor was it bound to depend for enforcement of its rights on the favor of the commonwealth. It had the matter in its own hands, by the requirement of its consent, and it protected its rights by giving its consent on condition. When a breach of the condition occurred the consent became revocable, and was revoked. Thereafter it was as if it had never been given.

We find no difficulty about the jurisdiction in equity, nor about the necessary parties. There is no question here of forfeiture of the charter or the franchises of the company. If the revocation of the township's consent does as a practical result prevent the exercise of the franchise and render the charter ineffective, that is nevertheless in law only a collateral incident, and is no more than a refusal of consent would have done in the first place. If the appellee had undertaken to build without any consent at all, it would have been an act without authority, and for which there was no adequate measure of damages at law. Such acts equity always enjoins: Groff's Appeal, 128 Pa. 621. Here the question is legally the same: is the appellee now undertaking to build without consent, because the consent given was conditional and has been revoked for breach of the

condition? The facts found by the learned court below leave no doubt that the answer to this question must be in the affirmative.

Much of the appellee's argument was devoted to the question of good faith on its part, and the hardship of a revocation of consent under the circumstances causing the delay. Those matters are for the township authorities, not for us.

Decree reversed, bill reinstated, and injunction directed to be awarded as prayed, and made perpetual. Costs to be paid by appellee.