## Oliver v. Thompson's Run Bridge Company.

*Bridge—Equity—Injunction—Street railway.*

A bridge company authorized to construct a greatly needed public bridge, and proceeding to construct the same in accordance with its charter, for the use of the general public, will not be enjoined from building the bridge because a street railway company may have inspired the formation of the bridge company for the very purpose of obtaining passage across a ravine otherwise unobtainable because of the objection of property owners. MESTREZAT, J., dissents.

Argued Feb. 27, 1900. Appeal, No. 26, Oct. T., 1899, by plaintiffs, from decree of C. P. No. 2, Allegheny County, July T., 1898, No. 843, on bill in equity, in case of William Oliver et al. v. Thompson's Run Bridge Company. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Bill in equity for an injunction.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was the decree dismissing bill.

*Johns McCleave*, of *Watson & McCleave*, for appellants, cited McCandless's App., 70 Pa. 210, Edgewood Railroad Company's App., 79 Pa. 257, In re Niagara Falls & Whirlpool Railway Company, 108 N. Y. 375, and Pittsburg, Chartiers & Youghiogheny Ry. Co. v. Scully, 16 W. N. C. 213.

*Willis F. McCook*, with him *Knox & Reed* and *J. H. Beal*, for appellees, cited Western Penna. R. R. Co.'s App., 104 Pa. 399.

OPINION BY MR. JUSTICE BROWN, October 8, 1900:
The injunction prayed for in the court below was to restrain

the Thompson's Run Bridge Company from entering upon plaintiffs' land for the purpose of constructing a bridge over Thompson's run. According to the findings of the court, justified by the testimony, " Thompson's run is a small stream in a valley some 350 feet wide, with high and precipitous hills on either side. The stream is liable to flood during heavy rains, and to back water from the river at high stages. The bridge is a wooden trestle bridge extending from hill to hill, a distance of about 350 feet, and from eighty to 120 feet above the run. It is on a level with the boulevard when it comes to the hill of the run. There is no public road there or within a thousand feet of it. The bridge is designed to accommodate the expected travel over the boulevard." By the terms of the act of assembly under which this bridge company was incorporated, it had the power to build a bridge over the stream stated in its charter, and, in erecting and completing the same and making all the necessary works and causeways to and from the structure, could exercise the right of eminent domain. Turning to its charter, the purpose of its existence is stated to be the construction and maintenance of a bridge in the borough of Duquesne over Thompson's run, commencing on the Monongahela boulevard and extending across the valley, over the run, to Oliver avenue; and, from an examination of the testimony, it was, at the time the injunction was prayed for, exercising a power expressly conferred upon it and doing the very thing for which it had been created. This is too manifest for further discussion, and the learned court below could not have concluded differently.

But the contention of the appellants is that the bridge company ought to have been enjoined because its purpose was not to build a public bridge over a stream within the meaning of the act of April 29, 1874, but to build a street railway through plaintiffs' land, to enable the Monongahela Street Railway Company to cross the same. It is true that this street railway company, not possessing the right of eminent domain, had been prevented from crossing plaintiffs' property, and, if the Thompson's Run Bridge Company, in exercising its franchises, was simply constructing a street railway that otherwise could not have been built across the ravine, the injunction ought to have gone out. The company would then be exercising a franchise it did not possess, and the plaintiffs would be entitled to

relief under the act of June 19, 1871. The findings of the court, however, answer this. They were that there was a great public need for this bridge as part of a contemplated highway between the large and growing populations of the thriving boroughs of Duquesne and Homestead, and that the bridge and its approach were not intended merely for street railway tracks, but were being constructed to accommodate ordinary vehicles; and the legal conclusion of the learned judge properly was, that as the company intended the bridge to be a public highway, it was relieved from the charge of fraud and trickery. The Monongahela Street Railway Company, or the companies that were merged in it, may have inspired the formation of the bridge company, and for the very purpose of obtaining a passage across the ravine; but this is no reason why the company should be enjoined from building a public bridge necessary for, and to be used by the public. Frequently the deprivation of privileges to private individuals results in great and useful public improvements, carrying with them the enjoyment of these denied privileges; but if they are made by corporations, municipal or otherwise, having power to make them, what matters it if special individuals be benefited so long as public convenience and welfare have been promoted? Private individuals procuring needed improvements even from selfish motives, though not of the highest order of benefactors, often do good, and ultimately receive public recognition for services rendered through forgotten selfishness. But for the refusal to allow the street railway company to cross the valley spanned by this bridge, it might not have been built; but it has been built as a public thoroughfare, supplying a public need, and that the street railway company will now use it in common with the great public, can be no objection to it or its construction. We are relieved from saying more now by the apt words of the judge below: " The fact that they intend to use it also for street cars does not make the improvement illegal. Being intended as a public highway relieves the case from any charge of fraud or trickery." The bridge, built as found by the court, is manifestly a public highway, and the distinction between this case and those in *McCandless's Appeal*, 70 Pa. 210, and Edgewood Railroad Company's Appeal, 79 Pa. 257, is clear.

In dismissing the bill the court assigned three reasons:

"First, the boulevard company and the bridge company are proceeding in good faith to construct a public highway, for the accommodation of the public generally, between Homestead and Duquesne boroughs, and not merely for a street railway; second, the bridge company is acting in good faith within the rights granted in its charter; and, third, the plaintiffs have a full and adequate remedy at law for any damages for the right of way over their property by the construction of the bridge and the approach thereto." We may simply add, "The company sought to do nothing that it was not specifically authorized to do by the act which gave it life, and it is a novel doctrine that a court of equity can be appealed to for its decree to restrain the doing of that which, by the express terms of the statute is declared to be lawful:" Gaw v. Bristol & Bridgewater R. R. Co., 196 Pa. 442. The decree is affirmed and the appeal dismissed at the cost of appellants.

MESTREZAT, J., dissents.