Nanticoke Suburban Street Railway Company, Appellant, v. People's Street Railway Company of Nanticoke and Newport.

*Street railways—Municipal consent—Reasonable time—Act of June 7, 1901, sec. 1, P. L. 514.*

Under the Act of June 7, 1901, sec. 1, P. L. 514, which requires that "the consent of the local authorities shall be promptly applied for, and shall have been obtained within three years from the date of the charter," the question as to what is a reasonable time always depends upon the circumstances. The statute fixes two years as reasonable time for obtaining consent, and prima facie any application long enough beforehand to afford fair opportunity to the municipality to consider and act upon it within the two years would comply with the statutory requirement. But on the other hand, the intent of the statute is to push forward the work, not to hold it in abeyance, and the courts are at liberty at all times to inquire into the delay for the purpose of ascertaining whether the intention is to make an effort in good faith to get consent, or merely to shut out rival competitors as long as possible.

If municipal consent has been promptly applied for, the want of it cannot be taken advantage of in any way to the prejudice of the company until the two years' limit has expired; and the company notwithstanding a refusal of the municipality, is entitled to the full period to overcome objections.

Where a street railway company has within a reasonable time applied for municipal consent, but such consent has not been given, and another company has filed extensions over the route of the first company, such company has the right, if the first company fails to obtain the municipal consent within two years from the date of its charter, to step into its place, and maintain the extensions.

Argued April 10, 1905. Appeal, No. 145, Jan. T., 1904, by plaintiff, from decree of C. P. Luzerne Co., May T., 1904, No. 3, dissolving preliminary injunction in case of Nanticoke Suburban Street Railway Company v. People's Street Railway Company of Nanticoke and Newport. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity for an injunction.

On a motion to continue the preliminary injunction WHEATON, J., found the following facts which were agreed to in this court:

The plaintiff company was incorporated February 18, 1904,

under the Act of May 14, 1889, P. L. 211, and the amendments thereto.

The plaintiff company has made no attempt, as yet, to secure municipal consent to occupy said streets.

The defendant company was incorporated September 27, 1892, under the act of May 14, 1889, and its supplements.

It was chartered to build and operate a street railway from Nanticoke borough along some of the streets thereof (designated in the charter) to the village of Glen Lyon, in Newport township, and has operated a street railway on said line since November 23, 1895.

December 10, 1903, two months and eight days before plaintiff's charter was granted, the defendant company, by resolution of its directors, duly resolved to extend its line of railway over and upon certain designated streets and roads of the borough of Nanticoke, which resolution was duly recorded in the office for recording deeds, etc., in and for Luzerne county, on December 19, 1903, in charter book No. 6, page 88, etc., and a duly exemplified copy of said record was filed in the office of the secretary of the commonwealth on December 24, 1903.

On December 23, 1903, the borough council of the borough of Nanticoke passed an ordinance authorizing and giving municipal consent to the defendant company to use and occupy the streets named in said extension resolution with its railway, which said ordinance was duly signed by the burgess of said borough, December 24, 1903, and entered and signed in the ordinance book of said borough before January, 15, 1904.

Among the streets thus covered by the extension proceedings and municipal consent, are nearly all of the streets afterwards set out in plaintiff's charter.

About March 28, 1904, the defendant company began the construction of its said extension and had constructed about 300 feet on Green street when the preliminary injunction was granted.

Further progress of construction will bring defendant to one of the disputed streets at the next street corner.

A third street railway company, the second in point of date of incorporation, named the Nanticoke and Hanover Street Railway Company, was incorporated February 11, 1902, under the act of May 14, 1889, and the amendments thereto, and the

streets, highways and bridges upon which this company was authorized to lay and construct its railway, and which formed the circuit of its route, were, inter alia, the same as some of those upon which the defendant company seeks to extend, and the same as those upon which the plaintiff company now claims a chartered right.

February 3, 1903, the Nanticoke and Hanover company sought the consent of the local authorities of Nanticoke—the borough council—to occupy, etc., the streets named in its charter.

February 19, 1903, an ordinance to grant the franchise sought was defeated on third reading by the unanimous vote of the councilmen present and voting.

The franchise sought was afterwards refused by the council twice—once on first reading of the proposed ordinance and once on third reading.

The final refusal was December 17, 1903.

The municipal consent to occupy the streets, etc., was never given to the Nanticoke and Hanover company.

The court entered a decree dissolving the preliminary injunction.

*Error assigned* was the decree of the court.

*James L. Morris, Thos. D. Shea, John M. Garman* and *Woodward, Darling & Woodward,* for appellants.—At the time of the filing of the extension proceedings by the appellee, and until the expiration of two years from February 12, 1902, by her own agreement, the Commonwealth was debarred from making the contract or agreement which the People's Street Railway Company now sets up as the foundation of her right to build a street railway on some of the streets named in the grant by the commonwealth to the Nanticoke and Hanover Street Railway Company : section 1, Act June 7, 1901, P. L. 514; Homestead Street Ry. Co. v. Pittsburg, etc., Electric St. Ry. Co., 166 Pa. 162; Com. ex rel. v. Uwchlan Street Ry. Co., 203 Pa. 608; Coatesville & Downingtown Street Ry. Co. v. Westchester Ry. Co., 206 Pa. 40.

The legal effect of the resolution of the People's Street Railway Company to extend its railway over the streets named in

the charter of the Nanticoke and Hanover Street Railway Company, followed by the recording thereof, and the filing in the office of the secretary of the commonwealth of an exemplification of the record, if of any validity or force whatsoever, was to obtain for her a charter, franchise and grant from the commonwealth, and a right to build her road upon these streets, provided the other precedent conditions necessary to her legal and lawful use thereof for these purposes had been fulfilled: Hannum v. Media, etc., Electric Ry. Co., 200 Pa. 44.

The charter, grant and franchise claimed on behalf of the People's Street Railway Company by virtue of her extension proceedings, were of no effect and conferred no rights or privileges upon her: Homestead St. Ry. Co. v. Electric St. Ry. Co., 166 Pa. 162; Com. ex rel. v. Ry. Co., 203 Pa. 608.

A railway company's right to appropriate streets for an extension of its route depends upon the conditions existing "at the time of the filing" of the exemplification. When "at the time of the filing" of an exemplification an insuperable obstacle to the adoption of the extension exists the extension franchise does not vest: Com. v. Uwchlan St. Ry. Co., 203 Pa. 608.

The extension proceedings adopted by appellee's directors on December 19, 1903, were regular on their face. Therefore, when they were presented to the secretary of the commonwealth on December 23, 1903, he had no discretionary power as to filing them: In re Pittsburg Rapid Transit Street Railway Company's Application, 51 Pittsburg L. J. 7; West Chester St. Ry. Co. v. Griest, 27 Pa. C. C. Rep. 427.

That there should be a clear field for the grant of a charter to another corporation was a condition precedent under the act of 1901. No circumstances could enable the company to avoid this essential prerequisite: In re Rock Glen St. Ry. Co., 10 Pa. Dist. Rep. 592; Butler Street Ry. Charters, 12 Pa. Dist. Rep., 441.

Municipal consent cannot suffice to create a right to lay a track without being joined to a corporate existence possessing a proper franchise: Barker v. Hartmann Steel Co., 129 Pa. 551.

*Q. A. Gates, John T. Lenahan* and *Richard B. Sheridan*, for appellee, cited: Homestead St. Ry. Co. v. Electric St. Ry. Co., 166 Pa. 162; Musser v. Ry. Co., 5 Clark, 466.

OPINION BY MR. CHIEF JUSTICE MITCHELL, June 22, 1905:

Understanding from the agreed statement of facts that the disposal of the injunction will really decide the whole controversy and that the parties desire the case to be so disposed of, we waive our usual rule of filing no opinion in cases on preliminary hearing and proceed to consider the main question.

By the agreed statement of facts it appears that the appellant was chartered February 18, 1904, that it has no municipal consent, and in fact has not yet applied for it. It has, therefore, no completed title to occupy the streets in controversy, but relies on the claim that the field was clear in February, 1904, and that by its charter at that time it pre-empted the right to occupy the streets, and cannot be interfered with during the two years given by the statute for obtaining the municipal consent.

A preliminary question is made, whether appellant has lost any of its rights, whatever they were, by laches. The Act of June 7, 1901, sec. 1, P. L. 514, requires for even the inchoate exclusive right to occupy the streets, that " the consent of the local authorities shall be promptly applied for, and shall have been obtained within two years from the date of the charter." The limit of time permissible under the term " promptly " has not been decided, nor is it in the nature of things capable of exact determination by the calendar. In Homestead St. Ry. Co. v. Pittsburg, etc., Electric St. Ry. Co., 166 Pa. 162, under the act of 1889, which did not contain the requirement of prompt application, it was held that the company was entitled to a reasonable time and could not be defeated by a rival company with a later charter which succeeded in getting the municipal consent first. What is reasonable time must always depend upon circumstances. The statute fixes two years as reasonable time for obtaining consent, and prima facie any application long enough beforehand to afford fair opportunity to the municipality to consider and act upon it within the two years would comply with the statutory requirement. But, on the other hand, the intent of the statute is to push forward the work, not to hold it in abeyance, and the courts are at liberty at all times to inquire into the delay for the purpose of ascertaining whether the intention is to make an effort in good faith to get consent, or merely to shut out rival competitors as

long as possible. The delay of the appellant in the present case has been considerable, but there is no evidence before us at present to indicate want of bona fide intention to obtain consent. We cannot, therefore, say that appellant has lost any of its rights by laches.

Coming now to the main question, was the field clear when appellant obtained its charter? That depends on the status of the appellee's charter at that date.

The Nanticoke and Hanover Railway Company obtained a charter on February 11, 1902, and under the act of 1901 it had a prior claim on the disputed streets for two years from that date. But on February 11, 1904, it had not obtained the municipal consent of the borough of Nanticoke, and its rights lapsed. So far as it was concerned, therefore, it dropped out of the case and left the way clear for the appellant on February 18. But prior to the expiration of its limit the appellee, in December, 1903, had passed a resolution to extend its route over the streets in controversy and had obtained the municipal consent. It is argued by appellant that these proceedings were void and wholly inoperative by reason of the prior existing, though inchoate and defeasible, title of the Nanticoke and Hanover Railway Company. That is the only relevancy the latter corporation has to this case.

The Nanticoke and Hanover Railway Company as already said, was chartered on February 11, 1902, and, therefore, under the statute, had two years until February 11, 1904, in which to obtain the consent of the borough. It is claimed, however, by the appellee that this right was terminated before the expiration of the two years, by the express and formal refusal of the borough's consent in February, 1903. This question whether the "statutory period in which to procure consent will be shortened or terminated by a positive act of refusal on the part of the municipality, or whether the full period may still be available for an opportunity to overcome objections" was left open in Coatesville, etc., St. Ry. Co. v. West Chester Ry. Co., 206 Pa. 40. But it was said in that case that for the substantial protection of the franchise granted, "the time for obtaining the municipal consent was enlarged (by the act of 1901) to the time allowed for building, and made an absolute right. Under this section, if municipal consent has been promptly

applied for, the want of it cannot be taken advantage of in any way to the prejudice of the company until the two years' limit has expired. " As we hold in the present case that an application within the two years, will prima facie meet the statutory requirement of promptness, unless the circumstances indicate a want of bona fide intention to obtain consent at all, it must follow that the company, notwithstanding a refusal, is entitled to the full period to overcome objections. There are good reasons why it should be so. Modifications of plans may be proposed, better terms offered and the public wants and convenience, the underlying consideration to the commonwealth for the grant of the franchise, may be more clearly understood. We are of opinion, therefore, that the statutory grant of two years in which to obtain the municipal consent is not shortened by an earlier refusal.

The remaining question, whether the proceedings by which the appellee extended its route during the two years for which the Nanticoke and Hanover company had the prior and exclusive claim, were so absolutely void that no subsequent acts could give them any validity, depends on the language of section one of the act of 1901, "no other charter to build a road on the same streets . . . . shall be granted to any other company within the time during which the company first securing the charter has the right to commence and complete this work." Literally this is a positive prohibition of a second charter within two years, and necessarily of what is equivalent, the extension of routes under prior charters.

But a consideration of the intent of the statute, and the circumstances under which it was passed, is convincing that notwithstanding the positiveness of the language of that provision, it was not intended as a literal and mandatory prohibition under all circumstances. The act of 1901, section one, was a re-enactment of the same section in the act of 1889 almost in the same words. As recited in the later act, for the purpose of amendment, it occupies something over a page (at a rough estimate 500 words, P. L. 1901, 514), yet the whole intent of the act and the substantial change of the law were expressed in less than a dozen words. The act of 1889 authorized charters for companies to construct railways on any street " upon which no track is laid, or authorized to be laid or to be ex-

tended, under any existing charter." In re-enacting this section, the Act of 1901 omitted the words "or authorized to be laid or to be extended," and substituted the words "upon which no track is laid under any existing charter, and in constant daily use for the transportation of passengers." This feature of the act was discussed in Coatesville, etc., St. Ry. Co. v. West Chester Ry. Co., 206 Pa. 40, where it was shown that the act of 1901 took away the protection previously afforded to "mere paper routes authorized but not built and perhaps not intended to be built but only adopted to close the streets to rival companies." But for the protection of rights acquired bona fide, and which such cases as Homestead St. Ry. Co. v. Pittsburg, etc., Electric St. Ry. Co., 166 Pa. 162, had shown were liable to certain dangers, the act of 1901 contained the provisions under discussion, giving two years for municipal consent, and prohibiting the grant of any other charter during that period. What is said in Coatesville, etc., St. Ry. Co. v. Ry. Co., 206 Pa. 40, need not be repeated here, but it is in exact line with our present view that the provision as to any second charter is not a mandatory prohibition under all circumstances, but is directory only, for the protection of prior rights, and to prevent the commonwealth from doing a vain thing by the grant of a charter which would be illusory and misleading. But if the circumstances show that the act would not be vain, as for instance if the first company had within the two years abandoned its route, or in any way the rights had ceased which the statute was designed to protect, the prohibition would no longer have any purpose to serve and might be disregarded. So also it is to be remembered that the main intent of the act was to abolish the exclusive prior claim over merely authorized routes, intended only to close the streets to others, and that its policy was to facilitate the development of transportation in the public interest. Bearing in mind also the fact that the first company's title, while prior and exclusive, was conditional on consent, etc., and therefore incomplete and defeasible, and that the time limit is in the public interest, it is entirely in accord with the intent and policy of the statute, that a second company should be allowed to put itself, so far as practicable, in position to step into the place should the failure of the first leave it vacant. Of course the presumption

is in favor of the first charter, and nothing can be permitted to be done to interfere with it, by seekers after a second place. The statute prima facie prohibits a second charter during the running of the first, and should one for any reason be issued it will be set aside on quo warranto, as in Com. ex. rel. v. Uwchlan St. Ry. Co., 203 Pa. 608. But where the first lapses, the newcomer next in position may step into its place.

When the appellee started its proceedings to extend its route, the two years allowed the Nanticoke and Hanover company were nearing the close, and the borough of Nanticoke had twice refused consent. While there was still time for a possible change of the municipal mind, yet the presumption was that consent would not be given, and that the Nanticoke and Hanover charter would fail. There is nothing in the circumstances, therefore, to impugn the good faith of the appellee, and when the prior charter did in fact lapse the appellee was first in the field.

Appeal dismissed.