# Myersdale & Salisbury Street Railway Company, Appellant, *v.* Pennsylvania & Maryland Street Railway Company.

*Equity—Equity practice—Requests for findings—Frivolous requests—Harmless error.*

While it is the duty of the court to make a ruling on every request for a finding of fact ·or conclusion of law, failure to do so will not constitute reversible error, if the request is frivolous, or the facts asked to be found are unimportant and not material in the decision of the case.

*Street railways—Contest over location of right of way—Chartered power—Parties—Equity—Act·of June 19, 1871, P. L. 1360.*

While a court of ·equity may have, under the Act of June 19, 1871, P. L. 1360, jurisdiction over a contest between two rival street railway companies as to the location of their lines, when the facts show that the later company is invading the rights of the former company to the use of streets or rights of way actually occupied or in the possession of the first company, such jurisdiction does not extend to questions involving the validity of the charters of the companies, or the forfeiture of their charter rights. As to such questions the remedy is by writ of quo warranto in suit by the commonwealth.

Where the rights, privileges and franchises of a street railway company have been sold at sheriff's sale and bought by an individual, and subsequently there is a reorganization of the company under the provision of the statute, without the purchaser at the sale participating therein, and without any conveyance by him to the company of the rights, privileges, franchises and property bought ·at the sheriff's sale, the reorganized company has no standing to maintain a bill in equity against another street railway company to enjoin the latter company from laying its tracks on streets and property over which the plaintiff company had the right to locate its line.

A court of equity under the authority of the Act of June 19, 1871, P. L. 1360, will not grant an injunction unless a proper case in accordance with the principles and practice of equity is made out. This act was not intended to do away with or change the general principles upon which equitable relief is administered. The complainant must establish a clear legal right, not doubtful, nor uncertain, and the injury threatened must be of a permanent and irreparable character. Where the complainant's title is doubtful equity will not relieve by injunction.

It is the duty of the court when an injunction bill has been filed, to

inquire and ascertain whether the individual, or corporation, seeking the relief, has a clear legal right to the use, occupation or enjoyment of the property or right, the invasion of which is sought to be enjoined. These are elementary principles in a proceeding in equity. The complainant must rely on the strength of his own title, or other legal right, and not on the weakness of the title or legal right asserted by the respondent.

Argued Nov. 8, 1907. Appeal, No. 202, Oct. T., 1907, by plaintiff, from decree of C. P. Somerset Co., Equity Docket, 1906, No. 13, dismissing bill in equity in case of Meyersdale & Salisbury Street Railway Company v. Pennsylvania & Maryland Street Railway Company. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction. Before KOOSER, J.
The bill prayed equitable relief, inter alia, as follows :

3. That defendant, its agents, employees and servants be enjoined specially until hearing and permanently thereafter, from continuing or doing any further work of any kind upon the plaintiff's right of way through the lands of S. P. Maust, John M. Wright, H. H. and F. A. Maust, and Joseph Miller and wife.

4. That defendant be restrained from entering upon or laying its track or erecting its poles or placing any of its equipment, or doing any work on the plaintiff's rights of way upon the lands of Catherine and William Engle upon the following streets in the borough of Meyersdale, namely : Eleventh street, in a southerly direction, to Beachley street; Beachley street, from Eleventh street to Center street; Center street, from Beachley street to Broadway; Broadway south, from Center street to the borough line, at the bridge over the Casselman river; Fourth street, from Beachley street to Salisbury street; Salisbury street, from southerly direction.

5. That defendant be ordered to remove from plaintiff's rights of way, through the lands of S. P. Maust, John M. Wright, H. H. and F. A. Maust, and J. S. Miller and wife, any track, poles, work of any kind, and any constructions whatsoever that it may have placed or erected thereon.

The material facts are stated in the latter part of the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*Samuel J. Graham,* with him *A. C. Holbert, Koontz & Ogle, H. M. Berkeley* and *J. G. MacConnell,* for appellant.—The court had jurisdiction over the bill : Hannum v. Ry. Co., 200 Pa. 44 ; Com. v. Pittsburg & C. Ry. Co., 24 Pa. 159 ; Shamokin Borough v. Elec. Ry. Co., 196 Pa. 166 ; Walters v. McElroy et al., 151 Pa. 549 ; Germantown Pass. Ry. Co. v. Citizens' Pass. Ry. Co., 151 Pa. 138.

*Ernest O. Kooser,* with him *J. A. Berkey, C. L. Shaver* and *Edmund E. Kiernan,* for appellee.—Plaintiff has shown no title to the premises in controversy. It stands here in the attitude of a reorganization of a corporation whose property was sold at judicial sale. The sale it rests its claim upon was made to Harvey M. Berkeley. The plaintiff's bill avers the property was conveyed to him. The certificate of reorganization shows that he did not participate in the reorganization. There is absolute want of any evidence as to whether he bought the property for any persons other than himself, or as to what he did with it. Plaintiff has sought to evade this point whenever it was raised, but has never undertaken to contradict the fact. We are permitted to make our own inferences from this.

We may presume that Mr. Berkeley has sold and conveyed to other persons or individuals having other combinations and relations, or upon trusts or conditions. Or we may infer, as we repeatedly argued in the court below, that Mr. Berkeley held the title and property until after the defendant's grade was completed, possibly still holds it, not having received his price for the premises, or possibly not having received the fees, costs and expenses due on account of said company's transactions and sheriff's sales. It may be supposed, also, that the plaintiff could not exhibit that deed, or give evidence of that transfer, without conclusively proving it had no rights whatever in the premises at the time complained of, or without badly exposing the insubstantial nature of its existence, or without calling forth conclusive written evidence that it had never been fully born, or had in fact expired.

OPINION BY MR. JUSTICE ELKIN, January 6, 1908 :

The appellant company by injunction seeks to restrain appellee company from laying its tracks, erecting poles, placing equipment, or doing any further construction work, upon particular streets in the boroughs of Meyersdale and Salisbury and upon certain rights of way along the line of railway through the intervening townships. As the record stands this court might as well have heard the case in the first instance. It requires 357 pages of appellant's paper-book to state the assignments of error and other preliminary matters, required by the rules of court, before beginning the argument. Requests for findings of fact and law cover sixty pages, while the exceptions to these findings are spread over 147 pages. The assignments of error are divided into two classes, first, as to findings of fact, of which there are eighty-six, covering fifty-five pages, and second, as to findings of law, which are so numerous that counsel have not thought worth while to number them. Such a record is of little value to an appellate court in determining the material and exact questions upon which the rights of the parties depend. It disregards the purpose of our system of pleading and practice. In an action at law the pleadings are so framed as to produce a definite issue and the whole case is proceeded with in such a manner as to develop the material matters relating thereto. In a proceeding in equity, it is true, common-law forms of pleading have no place, but it is nevertheless the duty of both court and counsel to limit the inquiry to the material questions of fact and law raised by the bill and answer. It is the duty of a chancellor to make his findings of fact concise, exact and definite, without making an argument to support them or amplifying the reasons which actuated him in reaching a conclusion. As to findings of fact, he takes the place of a jury, and his findings should be as distinct and definite as theirs. Where there is a conflict of testimony, he must weigh the evidence, consider the circumstances and reach a definite conclusion, which when reached should be stated in such manner as to leave no doubt what the finding is. When opposing counsel submit requests for findings of fact, conflicting in character, the issue should be fairly and unequivocally met so that when the fact is found there will be no doubt about its meaning.

In a proceeding in equity it is very difficult for a chancellor to limit the inquiry to the material questions involved without the aid of counsel. It is not good practice, nor does it result in advantage to a contending party for his counsel to file requests for 100 findings of fact, material and immaterial, relevant and irrelevant, when ten requests for material facts, concisely stated, would cover the case. In the present case it is alleged that the learned court below did not make a definite ruling on each request for findings of fact. The rule so requires, but there does seem to be justification for the position taken by the court in which it is stated that the requests were so numerous as to warrant his finding only material facts and disregarding those that were considered immaterial. While it is the duty of the court to make a ruling on every request, failure to do so will not constitute reversible error, if the request is frivolous, or the facts asked to be found are unimportant and not material in the decision of the case.

In the consideration of this case it must not be overlooked that it is a proceeding in equity to restrain a corporation from doing certain acts, and that the acts already done or about to be done, are authorized by its charter, or extensions filed in accordance with the provisions of law, and by grants secured from municipal authorities and by consents from abutting property owners. The right to maintain such a proceeding is based on the Act of June 19, 1871, P. L. 1360, which provides that in all proceedings at law or in equity, in which it is alleged that the private rights of individuals, or the rights or franchises of other corporations, are injured, or invaded, by any corporation claiming to have a right or franchise to do the act from which injury results, it shall be the duty of the court to examine, inquire and ascertain whether such corporation does in fact possess such rights and franchises, and if it be determined that such rights and franchises have not been conferred upon such corporation, courts in the exercise of their equitable powers restrain by injunction the injurious acts about which complaint is made. The language of the act is that the inquiry of the court should be to ascertain "if such rights or franchises have (not) been conferred upon such corporation." The ordinary method of ascertaining what rights or franchises have been conferred upon a corporation is

to examine its charter. When it clearly appears that a street
railway company is exercising powers conferred by its charter
after having obtained municipal grants and the consents of
township supervisors and abutting property owners, the gen-
eral rule is that a court of equity will not intervene to restrain
acts intended to carry out the corporate purpose. It must be
conceded, however, that this act has been given a liberal con-
struction in the attempt to reach the equities existing between
rival companies in many of our cases: Germantown Pass.
Railway Co. v. Citizens Railway Co., 151 Pa. 138; Allegheny
City v. Railway Co., 159 Pa. 411; Homestead Street Railway
Co. v. Railway Co., 166 Pa. 162; Pymouth Township v. Rail-
way Co., 168 Pa. 181; Coatesville, etc., Street Railway Co. v.
Railway Co., 206 Pa. 40; Nanticoke Suburban Street Railway
Co. v. People's Street Railway Co., 212 Pa. 395. These cases
hold there that there is jurisdiction in equity under the act of
1871 to determine the rights of rival companies to the occupa-
tion and use of streets under certain circumstances. The
ground upon which equity jurisdiction was sustained is that
the validity of the charter or the forfeiture of charter rights
was not involved in the proceedings. In no case, however,
has it been held that where the proceedings undertake to
challenge the validity of the charter, or claims a forfeiture of
the rights and franchises granted thereby, equity has jurisdic-
tion. The act does not authorize a private citizen or a rival
corporation, to assume the position of the commonwealth, as
in a writ of quo warranto for the purpose of establishing a
forfeiture by nonuser or otherwise : Western Penna. Railroad
Company's Appeal, 104 Pa. 399. The act limits the inquiry
to the nature and extent of the franchises prima facie conferred
by the charter and does not extend it to the validity of the
charter itself: Windsor Glass Co. v. Carnegie Co., 204 Pa. 459.
Nor does it confer the power to determine whether the char-
ter was originally invalid or has been forfeited : Thirteenth and
Fifteenth Streets Passenger Railway Co. v. Broad Street
Rapid Transit Street Railway Co., 219 Pa. 10. A street rail-
way company may diverge from its original route, when the
reason for so doing is a necessity or a great public convenience :
Penna. Railroad Co. v. Railway Co., 184 Pa. 227. If, how-
ever, there is a greater deviation than neccessary from its

charter route, or if the charter itself is open to objection, the commonwealth alone can raise the question: Penna. Railroad Co. v. Street Railway Co., 176 Pa. 559. Where a corporation appears to be acting regularly in the exercise of powers conferred by its charter, the general rule is that equity will not interfere: Gaw v. Railroad Co., 196 Pa. 442; Oliver v. Bridge Co., 197 Pa. 344. On the other hand, it has been held that the construction of a street railway on a public road will be enjoined at the suit of an abutting property owner whose consent has not been obtained: Mory v. Oley Val. Railway Co., 199 Pa. 152; Hannum v. Electric Railway Co., 200 Pa. 44; also that a street railway company may maintain a bill in equity to restrain another company from wrongfully laying tracks on a street occupied by complainant: Germantown Pass. Railway Co. v. Citizens' Pass. Railway Co., 151 Pa. 138; or when a time limit is a condition upon which the municipal grant is made and the consent of the township authorities is given, failure to complete the construction within the time limited works a forfeiture, which can be asserted in a court of equity by the municipality or township having the right to do so: Plymouth Township v. Railway Company, 168 Pa. 181; Allegheny City v. Railway Company, 159 Pa. 411; Mill Creek Township v. Railway Company, 209 Pa. 300. In many of the cases the question of jurisdiction was not raised, and in no case has a general rule upon the subject been definitely stated. The rule of all the cases is that if the validity of the charter is attacked, or a forfeiture of charter rights is asserted, or an abandonment is claimed, the commonwealth alone can raise the question by a writ of quo warranto. It would seem to necessarily follow that when two companies by oversight or otherwise, have secured a charter for practically the same route the proper procedure to test the validity of the charters is by writ of quo warranto at the suggestion of the attorney general. This is especially true when controversies arise between companies thus chartered and before the lines are graded and tracks laid. It is entirely proper for either company to petition the attorney general asking that such a proceeding be instituted. Of course, if one of the companies is in the undoubted occupation of certain streets, with the unquestioned right to use the same and another company under-

takes to invade that right, equity will enjoin the invading
company on the ground that the validity of the charter is not
involved and that only an incidental right growing out of the
power conferred is in dispute. In the present case the bill
filed in effect challenges the right of the respondent to con-
struct and equip its line of railway, and this on the ground
that the appellant company has the prior right at all the dis-
puted points at least and that its rights are being invaded by
the appellee company. This is a controversy between two
street railway companies, the first incorporated in 1901 and re-
organized after judicial sale in 1905 ; the second incorporated
in 1906 upon the assumption no doubt that the first company
had either abandoned or forfeited its franchises or at least
could not assert an exclusive right to occupy the streets and
highways. Under the circumstances, the interests of both
companies would have been better served and the rights of all
parties more clearly defined in a proceeding by quo warranto
instituted by the commonwealth on the relation of her attor-
ney general. The case was heard and decided in the court be-
low upon its merits without reference to the question of juris-
diction which, to say the least, may be considered doubtful,
under the circumstances, and we have concluded to treat it
as if equity had jurisdiction if the facts established warrant
such intervention.

A court of equity, under the authority of the act of 1871,
will not grant an injunction unless a proper case in accordance
with the principles and practice of equity is made out. This
act was not intended to do away with or change the general
principles upon which equitable relief is administered : Becker
v. Street Railway Co., 188 Pa. 484 ; Gaw v. Railroad Co., 196
Pa. 442; Oliver v. Bridge Co., 197 Pa. 344. The complainant
must establish a clear legal right, not doubtful, nor uncertain,
and the injury threatened must be of a permanent and irrepar-
able character. Where the complainant's title is doubtful
equity will not relieve by injunction : Commonwealth v. Rush,
14 Pa. 186; Bunnell's Appeal, 69 Pa. 59; Commissioners v.
Long, 1 Pars. Eq. Cases, 143. It is the duty of the court when
an injunction bill has been filed, to inquire and ascertain
whether the individual, or corporation, seeking the relief, has
a clear legal right to the use, occupation or enjoyment of the

property or right, the invasion of which is sought to be enjoined. These are elementary principles in a proceeding in equity. The complainant must rely on the strength of his own title, or other legal right, and not on the weakness of the title or legal right asserted by the respondent. Keeping in mind these principles, let us briefly examine the facts to ascertain whether appellant has shown such clear legal right as to justify a court of equity in granting the injunction prayed for. This company filed articles of association in the office of the secretary of the commonwealth August 7, 1901, and on the same day letters patent were issued. Extensions were subsequently filed June 16, 1902, and June 14, 1904. It secured ordinances from the borough of Meyersdale approved March 10, 1903. These ordinances provide that work shall begin within three months and be completed within nine months from the commencement of the work. It is contended that this ordinance was amended May 31, 1904, so as to extend the time for the completion of the work eighteen months from the commencement thereof. Even under the amended ordinance the time limit for completing the work would be December 10, 1904. The ordinance secured from the borough of Salisbury dated February 24, 1903, provides that work shall begin within ninety days from the date thereof and be completed within nine months from the commencement of the work. There was an attempt to prove that the time limit fixed by this ordinance had been extended, but the evidence produced was not sufficient to justify such a finding. Nothing done by the appellant company subsequent to the time when these ordinances expired by their own limitation as to the time could be considered sufficient in law to renew, revive or extend them. The company got into financial difficulties, became insolvent, and its rights, privileges, franchises and property were sold by the sheriff in the summer of 1905, and a deed was executed and duly acknowledged in open court to the purchaser. This deed was recorded in the sheriff's deed book and was considered by the learned court below in this case. The advertisement for sale contained a separate description for each of nineteen different parcels of land, or rights of way, and the deed followed the descriptions contained in the advertisement, so that the record shows the title to all of the

rights, privileges and franchises of the complainant company as well as the nineteen parcels of land or rights of way to be in Harvey M. Berkeley, the purchaser at the sale. The learned court below found as a fact that "there is no evidence that title has ever passed out of Harvey M. Berkeley for anything he may have acquired at said sheriff's sale. He did not organize or participate in the organization of the company after the sheriff's sale, and there is no evidence that the title to the property he acquired ever became vested in the plaintiff reorganized company." There was ample evidence to support this finding; indeed, there is no evidence to show anything else. It is true appellant company contends that there was a reorganization after the judicial sale under the provisions of the statute, and that by reason of such reorganization the title of the purchaser at the sale became vested in the reorganized company. This might be true if the record showed that the purchaser had been a party to the reorganization proceeding, but it does not show this fact, nor did Berkeley nor anyone else testify that he assented to or in any way participated in the reorganization. Here, then, is a public record showing that the title to all the rights, privileges, franchises and property of the original company is vested in a purchaser at a judicial sale and the record in this case is absolutely silent as to what disposition he ever made of the property thus acquired by him, nor does it show title in appellant. How, then, can it be said to have established such a clear legal right, either of title to the property or of the franchises of the corporation as to justify a court of equity in making a decree restraining the appellee company in the exercise of powers, privileges and franchises conferred upon it by the commonwealth. Even if Berkeley had been a party to the reorganization proceedings, which so far as the record shows he was not, in order to complete a record title careful conveyancing would seem to require that he make a conveyance to the reorganized company at least for those parcels of land or rights of way purchased by him and for which he held a deed.

The appellant is seeking equitable relief and has the burden of establishing a clear legal right to the use and occupation of the streets and the possession of the rights of way in dispute. It has failed to show that it has any valid or existing ordi-

nances giving it the right to the use of the streets in question, nor has it proven title to the disputed rights of way, and it necessarily follows that the clear legal right necessary to sustain this proceeding has not been established. Art. XVII, sec. 9 of the constitution and the act of 1889 and its supplements require municipal consent. This is a condition precedent, and without it a company incorporated thereunder has no right, present or future, to occupy streets. The prior company not having obtained such consent, has no standing by bill of injunction to question the right of a later company to occupy such streets, because it cannot be said within the meaning of the law to have suffered special damage: Larimer, etc., Street Railway Co. v. Street Railway Co., 137 Pa. 533. If the prior company did obtain municipal consent in the first instance, but lost it by failure to perform the conditions precedent, it is just in the same position as if it had not obtained consent at all: Plymouth Township v. Railway Co., 168 Pa. 181. It is no answer to say that the municipalities have acted unfairly or that the company has become involved financially and has thus been prevented from constructing and completing its line. These are questions for the municipalities and the parties themselves and not for the courts.

Decree affirmed at cost of appellant.